

# PRiME
### Diagnostic Imaging

6491 Southwest Blvd., Ft. Worth, TX 76132

(214) 341-8770
Fax (214) 341-1603

**PATIENT NAME:** CHAVEZ, JOSE
**DATE OF SERVICE:** 6/9/2017
**CHART#:** 288888
**DATE OF BIRTH:** Redacted
**REFERRING PHYSICIAN:** GARDNER, GREGORY DO

## MRI RIGHT SHOULDER

**CLINICAL HISTORY:** Shoulder pain with history of motor vehicle accident.

**TECHNIQUE:** Axial fat suppressed proton density, sagittal oblique T2 fat saturation, and coronal oblique T1, T2, and T2 fat saturation sequences were acquired through the right shoulder.

**FINDINGS:** The examination is extremely limited by motion artifact. The sagittal T2 fat saturation sequence was repeated. The coronal T2 fat saturation sequence is very limited.

A large glenohumeral joint effusion is present, which communicates freely with the subacromial/subdeltoid bursal space due to full-thickness tearing of the majority of the supraspinatus and infraspinatus tendons. It is possible a small portion of either tendon is intact; however, due to the degree of motion artifact, it is difficult to determine with certainty.

There is humeral head high-riding due to the full-thickness tears. No significant muscle atrophy is present. The teres minor is intact. The distal 2.3 cm of the subscapularis tendon demonstrates 70% thickness high-grade partial tearing.

No anterior or posterior glenoid labral tears are appreciated. The integrity of the superior labrum cannot be defined due to the degree of motion artifact on the coronal T2 fat saturation sequence. The long head of the biceps tendon demonstrates partial tearing and grade II strain.

There is moderate acromioclavicular joint capsular hypertrophy and joint arthrosis. Mild lateral acromion downsloping is present. There is no anterior acromion downsloping. There is no os acromiale. Bone edema is present within the lesser tuberosity area.

**IMPRESSION:**

1. The examination is extremely limited due to extensive motion artifact.

2. Full-thickness tears of the supraspinatus and infraspinatus tendons with humeral head high riding and communication between a glenohumeral joint effusion and fluid within the subacromial/subdeltoid bursal space. There is no significant rotator cuff muscle atrophy.

3. High-grade partial tearing of the distal subscapularis tendon.

4. Grade II strain and partial tearing of the long head of the biceps tendon. The superior labrum cannot be evaluated due to the degree of motion artifact.



**PRIME Diagnostic Imaging**

6491 Southwest Blvd., Ft. Worth, TX 76132

(214) 341-8770
Fax (214) 341-1603

PATIENT NAME: CHAVEZ, JOSE
DATE OF SERVICE: 6/9/2017
CHART#: 288888
REFERRING PHYSICIAN: GARDNER, GREGORY DO
EXAM: MRI RIGHT SHOULDER
PAGE TWO

5. Sources for rotator cuff impingement in this patient include moderate acromioclavicular joint capsular hypertrophy and joint arthrosis and mild lateral acromion downsloping.

NICHOLAS G. IWASKO, M.D.
Board Certified Musculoskeletal Radiologist
dd D:6/12/2017 10:10:26 AM T: 06/12/2017 11:58 AM
FINAL

Chavez, Jose (MR # 6594667)                                                                    Page  of 7

## VISIT DETAILS

### Reason for Visit

Shoulder Pain            right shoulder pain

### Vital Signs

| BP | Pulse | Temp | Resp | Ht | Wt |
|---|---|---|---|---|---|
| (!) 149/97 (BP Site: Right arm, BP Position: Sitting, BP Cuff Size: Medium) | 60 | 97.9 °F (36.6 °C) (Oral) | 18 | 5' 7" (1.702 m) | 198 lb (89.8 kg) |

| BMI | Smoking Status |
|---|---|
| 31.01 kg/m2 | Never Smoker |

### Issues Addressed

**Complete tear of right rotator cuff** - Primary

### Instructions

BARDIN STREET CLINIC PHONE #  817-702-8700.  Or   ACCLAIM BEN HOGAN PHONE # 817-702-9100.

SURGERY DATE____3/27/18_____WITH DR WEBB.

SURGERY CENTER- (JPS SURGERY CENTER OF ARLINGTON) AT-- 817-702-8527.
  4400 NEW YORK AVE. (CORNER OF I-20 AND NEW YORK)

 THE SURGERY CENTER WILL CALL YOU IN  3-5 DAYS ** BEFORE** SURGERY DATE TO SET UP PRE-OP APPOINTMENT AT THE SURGERY CENTER .
+++++ PLEASE MAKE SURE  WE HAVE YOUR CORRECT PHONE NUMBERS.+++

DURING YOUR PRE -OP APPOINTMENT YOU WILL BE ASKED ABOUT YOUR MEDICAL HISTORY, LABS MAY BE DRAWN , ETC. AND THE NURSE CAN ANSWER ANY QUESTIONS YOU MAY HAVE AT THAT TIME.
++++++PLEASE BRING ALL MEDICATIONS YOU ARE TAKING TO THE  PRE OP APPOINTMENT
+++++++

IT IS AN OUTPATIENT PROCEDURE AND YOU WILL NEED SOMEONE TO BE WITH YOU AT ALL TIMES.

ON THE DAY OF SURGERY YOU WILL RECEIVE A PRESCRIPTION FOR PAIN OR IT MAYBE E SCRIBED TO YOUR PHARMACY.  (please take as indicated on bottle -unless otherwise instructed)

YOU WILL LEAVE THE SURGERY CENTER WITH CRUTCHES FOR KNEE SURGERY--KEEP PILLOWS UNDER YOUR HEEL TO KEEP EXTENSION. ROTATE ICE PACKS GIVEN AT SURGERY CENTER TO HELP WITH PAIN.

 A SLING FOR SHOULDER SURGERY. -- *KEEP ICING EXTREMITY TO HELP WITH PAIN SINCE PAIN MEDICINE WILL ONLY KNOCK THE EDGE OFF OF YOUR PAIN.*

From the desk of:                                                          2/28/2018 3:59 PM
**Jennifer Marshall**

   Re: Jose Chavez      Policyholder: Nix Door and Hardware
Member SS#: xxx-xx-xxxx      Group ID#: 10098471
  Claim #: 00EU3043       Policy #:

I received a call from the claimant. He sent a fax today that includes his medical records. He would like his claim reviewed. I verified receipt of his fax. He did not send a written request for a review. He explained he can't write. I asked him what specifically he disagrees with in regards to the LTD decision. He told me he disagrees with it all. I specifically asked and confirmed that he does not think that his medical conditions, shoulder pain or hand pain should be considered limited conditions. He did not identify any other conditions he felt were disabling. He has sent us records from his shoulder and hand appointments.

==He needs shoulder surgery which is scheduled for 3/26/18==, and once that surgery is done he will be having another fusion surgery on his right hand. He can't use his right hand, has to wear a cast all the time, and take medications for inflammation. He can't work and he just wants to get everything fixed so he can return to work.

I let him know I will send his file to our administrative review unit, and a 2nd opinion review will be conducted. Someone from ARU will be in contact with him.

Page 1 of 1                   Signed _Jennifer Marshall_

JPS HOSPITAL
1500 South Main St
FORT WORTH TX 76104

Chavez, Jose
MRN: 6594667, DOB Redact   Sex: M
Adm: 3/27/2018, D/C: 3/27/2018

**Brief Op Note by Webb, Brian Garry, MD at 3/27/2018 12:39 PM (continued)**

**Surgeon(s) and Role:**
 * Nwannunu, Brian, MD - Resident -
 * Webb, Brian Garry, MD - Scrubbed

**Anesthesia:** General with IS block

**Findings:** Consistent with pre and postoperative diagnoses, without additional or unusual findings or complications.

**Complications:** none

**Estimated Blood Loss:** less than 50 mL

**Specimens:**
**Specimens**
  None

**Disposition:** PACU - hemodynamically stable.


Webb, Brian Garry 3/27/2018 12:39 PM


Electronically signed by Webb, Brian Garry, MD on 3/27/2018 12:41 PM

Not recorded

**Op Note signed by Webb, Brian Garry, MD at 3/27/2018 9:20 PM**

| Author: Webb, Brian Garry, MD | Service: (none) | Author Type: Physician |
|---|---|---|
| Filed: 3/27/2018 9:20 PM | Date of Service: 3/27/2018 3:10 PM | Creation Time: 3/27/2018 8:09 PM |
| Note Type: Op Note | Status: Signed | |
| Editor: Webb, Brian Garry, MD (Physician) | | Trans ID: 782898351 |
| Dictation Time:    Trans Time: | Trans Doc Type: Operative/Proc Records-Dictated | Trans Status: Available |

```
Name: JOSE CHAVEZ
MR#: 6594667
Admit Date: 03/27/2018
DATE OF SERVICE: 03/27/2018



   PREOPERATIVE DIAGNOSES:   Right shoulder:
```

Case 3:18-cv-02013-N   Document 16-1   Filed 09/18/18   Page 6 of 13   PageID 189

JPS HOSPITAL
1500 South Main St
FORT WORTH TX 76104

Chavez, Jose
MRN: 6594667, DOB redact Sex: M
Adm: 3/27/2018, D/C: 3/27/2018

**Op Note signed by Webb, Brian Garry, MD at 3/27/2018 9:20 PM (continued)**

1. Massive chronic rotator cuff tear.
2. Acromioclavicular joint arthritis.
3. Labral tearing with chronic proximal biceps rupture.
4. Subacromial impingement.

POSTOPERATIVE DIAGNOSES: Right shoulder:
1. Massive chronic rotator cuff tear.
2. Acromioclavicular joint arthritis.
3. Labral tearing with chronic proximal biceps rupture.
4. Subacromial impingement.

PROCEDURES: Right shoulder arthroscopic:.
1. Rotator cuff repair.
2. Distal clavicle excision.
3. Subacromial decompression.
4. Glenohumeral joint debridement.

RESIDENT: Brian Nwannunu, MD.

STAFF: Brian Garry Webb, MD, who was scrubbed for the case.

ANESTHESIA: General with an interscalene block prepared by the anesthesia
team.

FINDINGS: Consistent with pre and postoperative diagnoses without additional
or usual findings.

COMPLICATIONS: Complications none.

ESTIMATED BLOOD LOSS: Less than 50 mL.

SPECIMENS: None.

DISPOSITION: To PACU, hemodynamically stable.

OPERATIVE INDICATIONS: A 48-year-old male with right chronic rotator cuff
tear, massive retracted, level of the glenohumeral joint or more, AC
arthritis, chronic biceps rupture, and subacromial impingement. He has
failed

1500 South Main St  
FORT WORTH TX 76104  
MRN: 6594667, DOB: Redact Sex: M  
Adm: 3/27/2018, D/C: 3/27/2018

**Op Note signed by Webb, Brian Garry, MD at 3/27/2018 9:20 PM (continued)**

nonoperative management. We were very upfront with him with surgery, may not
take care of his symptoms. He may not heal this rotator cuff tear. If we get
it fixed, he may need to go on to have a total shoulder replacement including
a reverse arthroplasty. This was elective. He could opt to do other
nonoperative management versus surgery and wanted to get surgery to try to see
if we can get him some relief and get him some repair. Risks of procedure
including, but not limited to pain, bleeding, infection, damage to structures,
need for more surgery, failure of surgery, continued pain, loss of range of
motion/stiffness, blood clots, anesthesia complications, and death, also risk
of retear, continued pain, stiffness, inability to get back to normal
preinjury level of activity and need for further procedures as discussed
above. These were all discussed with the patient and he wished to proceed
with surgery and has consented.

DESCRIPTION OF PROCEDURE: After the correct limb was signed in the
preoperative assessment area, the patient was brought back to the operating
suite, was placed supine on the operating room table underwent general
anesthesia. He was then placed in the beach chair position with all the bony
prominences fully padded. We did a time-out to make sure we were operating
the correct limb. He received preoperative antibiotics. We made our standard
posterior incision, anterior incision, and lateral incision. Anterior
incision was placed in rotator cuff interval, lateral incision was placed in
the subacromial space.

Glenohumeral joint. Chronic biceps rupture. He had a large stump that was
still attached to the superior labrum, but the biceps tendon was completely



JPS HOSPITAL  
1500 South Main St  
FORT WORTH TX 76104

Chavez, Jose  
MRN: 6594667, DOB: [redact] Sex: M  
Adm: 3/27/2018, D/C: 3/27/2018

---

**Op Note signed by Webb, Brian Garry, MD at 3/27/2018 9:20 PM (continued)**

retracted. The stump was debrided. We did an extensive debridement all the
way around the labrum, which was coming off and very degenerative. There was
a lot of debris inside that joint, which was debrided. Also doing this
extensive debridement of articular cartilage, he did have a flap of articular
cartilage coming off the inferior glenoid that was lightly debrided. Axillary
recess had no loose bodies. Humeral head overall looked okay. Subscapularis
was torn, retracted, and not repairable. We were staring up into the
subacromial space. We then moved up in the subacromial space. He did have
somewhat of an acetabularization of the inferior acromion. Light debridement
to get rid of the hook was done, so it was nice and smooth. The distal
clavicle excised coming in from the anterior portal and removing 8 mm of
distal clavicle with the bur coming from that anterior portal. The rotator
cuff was retracted, passed the level of the glenoid, and humeral head margin.
We had to free it up with the spatula up on top and the bottom of it. It was
pull off and was kind of posteriorly. So, as we pulled the tendon from
posterior to anterior, we were able to get at least to the footprint but again
quite retracted massive tear supraspinatus and entire infraspinatus torn. We
roughened up the footprint. We were able to put in 3 horizontal mattress
FiberTape sutures using the scorpion needle from Arthrex. We then able to
pull that down starting posterior and working our way anterior. One 4.5
SwiveLock anchor was placed posteriorly bringing the cuff down, that one was
good. The next one we started with another 4.5 SwiveLock anchor that was
pulled out of the bone, so we had to go up to a bigger 7 mm screw suture
anchor SwiveLock from Arthrex. Then, anteriorly we put one 5.5. So, there
are horizontal mattress anchored with these large suture anchors on the
lateral aspect of the humerus bringing the rotator cuff to the articular
margin of the footprint. Whether this heals or not only time is going to

---

JPS HOSPITAL
1500 South Main St
FORT WORTH TX 76104

Chavez, Jose
MRN: 6594667, DOB Redact Sex: M
Adm: 3/27/2018, D/C: 3/27/2018

Op Note signed by Webb, Brian Garry, MD at 3/27/2018 9:20 PM (continued)

tell. It was in a little bit of tension, but we did have to put his arm up in
the abducted position. We flushed everything out with saline and closed with
Monocryl suture. Sterile dressings were placed including a mobilizer. The
patient was awakened and taken to PACU in stable condition.

POSTOP PLAN: Standard rotator protocol. Passive only for 6 weeks. If he
starts moving this with his own motion at 1st he will likely pull off the
rotator cuff repair. It is going to take quite a lot of time to see how long
well this does. If this fails, he will need a reverse arthroplasty or a large
head hemiarthroplasty as there is no infraspinatus. This would likely have
not healed the entire rotator cuff. Hopefully, we can get some healing of it
and give him some relief.

_____
Brian Garry Webb, M.D.

BGW/MODL
D:  03/27/2018 12:45:59
T:  03/27/2018 16:24:45
Job #:  390931/782898351

Electronically signed by Webb, Brian Garry, MD on 3/27/2018 9:20 PM



**James L. Johnson**

---

| | |
|---|---|
| From: | James L. Johnson [james@jamesljohnsondallasattorney.com] |
| Sent: | Thursday, September 06, 2018 4:41 PM |
| To: | 'Cameron E. Jean' |
| Subject: | FW: Chavez v. Standard; certificate of conference, amended answer |

Cameron:

I am forwarding below my email to Ryan that we just discussed.

As we also discussed, I ask that Standard amend its answer in the following categories:

1.   The use of "legal conclusion" to avoid a specific response in paragraphs 3-5, 19, 28, 44, 72-73, 104, 106-107, 150, 191, 196-197.  See Bruce, below, at *2.

2.   The use of a denial, after stating that Standard lacks knowledge or information, in paragraphs 9, 143-147.

3.   The non-responsiveness of paragraphs 161-177.  Standard repeatedly states that Dr. Volk's memo "contains his opinions and the basis for his opinions," but also states that it "denies the remaining allegations."  Standard has effectively evaded the allegations, in the same way as the "speaks for itself" phrase found insufficient in Bruce, by use of different words that have the same meaning as the "speaks for itself" phrase.

4.   Paragraph 144 does not address the allegations in paragraph 144 of the complaint.  That problem cannot be fixed merely by changing "143" to "144."

5.   Paragraph 279 denies everything not specifically admitted, which on its face nullifies all the paragraphs in which Standard pleaded lack knowledge or information.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

****************************************************************************************
*****************************************************************
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

---

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Wednesday, August 22, 2018 11:51 AM
**To:** 'Ryan K. McComber'

**Cc:** 'Julie John'
**Subject:** RE: Chavez v. Standard

Ryan:

I thank you for your call yesterday. I am agreeable to a 2-week extension of time for Standard to file an original answer, but not for any other response. I have edited your draft stipulation and order to that effect, and signed the stipulation. See attached.

I agree to the extension to allow Standard more time to substantively respond to the allegations pleaded, rather than to avoid answering with nonresponsive phrases like assertions that the administrative record or a particular document "speaks for itself." As Judge Fitzwater ruled recently in one of my other cases: "This type of pleading is insufficient." <mark>Bruce v. Anthem Ins. Cos., 2015 WL 1860002, at *3 (N.D. Tex. Apr. 23, 2015)(compelling more specific answer).</mark>

Even more recently, another insurer ("LINA") avoided answering several factual allegations in a complaint on the basis that the referenced document "speaks for itself." The court ordered LINA to file an amended answer "without basing its responses on any assertion that a document 'speaks for itself'." Ball v. Life Ins. Co. of N. Am., 2017 WL 6621539, at *6 (N.D. Tex. Dec. 28, 2017). The Court acknowledged my argument that LINA's response to my motion "continues LINA's history of procedural violations that have the effect of 'sandbagging' Ball" – "[w]here LINA's actions previously contravened the ERISA standards, they now contravene the Federal Rules of Civil Procedure and the case law construing them." Id. at *2.

<mark>As in Ball, Plaintiff's Original Complaint in this case includes allegations of "sandbagging" during the administrative phase by failing to comply with procedural requirements. I urge Standard to avoid continuing its procedural violations into the litigation phase.</mark>

You indicated that you have not yet received the claim file. When you do, I want to alert you now that I will expect Standard to serve an initial disclosure under Rule 26(a)(1) when the time comes. ERISA actions are not "exempt from initial disclosures" under Rule 26(a)(1)(B)(I). Bruce v. Anthem Ins. Cos., 307 F.R.D. 465, 466 (N.D. Tex. 2015). The court in Bruce accordingly ordering the defendant to "make the initial disclosures required by Rule 26(a)(1)(B). Bruce, 307 F.R.D. at 467.

In addition, Plaintiff's Original Complaint includes allegations about Standard using its consultant as a pretext to deny Mr. Chavez's claim. That was also an issue in Watson v. Provident Life & Accident Ins. Co., 2009 WL 1971598 (N.D. Tex., Jul. 7, 2009) (granting motion to compel). Please feel free to visit with Dennis Lynch about that case.

Finally, I will alert you now to a paragraph that, when you receive the claim file, you will see on the last page of my letter to Standard dated June 13, 2018:

> If litigation becomes necessary, the court is authorized to award attorney's fees in the event that Mr. Chavez prevails. See Thomason v. Metropolitan Life Ins. Co., 2018 WL 1174086 (N.D. Tex. Mar. 5, 2018)(awarding over $243,000 in attorney's fees); Koehler v. Aetna Health, Inc., 915 F. Supp. 2d 789 (N.D. Tex. 2013)(awarding over $90,000 in attorney's fees under ERISA); Alexander v. Hartford Life and Accident Ins. Co., 2010 WL 3660054 (N.D. Tex. Aug. 30, 2010) (recommending award of over $80,000 in attorney's fees plus over $20,000 in prejudgment interest under ERISA), approved, 2010 WL 3659999 (N.D. Tex. Sept. 20, 2010); Bray v. Fort Dearborn Life Ins. Co., 2007 WL 9711577 (N.D. Tex. Aug. 6, 2007)(awarding over $45,000 in attorney's fees).

The fee awards in Thomason, Koehler, Alexander, and Bray were for services I provided to the claimants.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

********************************************************************************
******************************************************************

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Wednesday, August 22, 2018 10:04 AM
**To:** james@jamesljohnsondallasattorney.com
**Cc:** Ryan K. McComber; Julie John
**Subject:** Chavez v. Standard

James,

Thank you for taking the time to talk with me yesterday.  This e-mail will confirm Standard's request for a short two-week extension of our deadline to answer or respond to Plaintiff's Original Complaint in this matter.

Attached is the proposed stipulation and proposed order.  If these documents meet with your approval, please let me know by return e-mail and we will add your electronic signature and file today.

Should you have any questions, please give me a call.  Thank you in advance for your professional courtesy in this regard.

Ryan



| **Ryan K. McComber** | ph: 214-939-2000 | Figari + Davenport, LLP |
| ryan.mccomber@figdav.com | dd: 214-939-2014 | 901 Main Street, Suite 3400 |
| **figdav.com** | fx: 214-939-2090 | Dallas, Texas 75202 |