UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE CHAVEZ | § | |
| | § | |
| V. | § | CAUSE NO. 3:18-cv-2013-N |
| | § | |
| STANDARD INSURANCE COMPANY | § | |

<u>**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION**</u>

TO:  Defendant, Standard Insurance Company [hereinafter "Standard"] by it counsel, Ryan K. McComber, Figari + Davenport, LLP, 901 Main Street, Suite 3400, Dallas, Texas 75202.

COMES NOW Jose Chavez [hereinafter "Chavez"], Plaintiff, and requests that Standard produce the following documents at the offices of his undersigned counsel (or as may be otherwise agreed) within 30 days after service hereof.  Fed. R. Civ. P. 34.

<u>**INSTRUCTIONS**</u>

1.   In responding to this request for production, you are requested to furnish all responsive documents and electronically stored information (as defined in Fed. R. Civ. P. 34(a)(1)(A)) within your possession, custody or control.

2.   Pursuant to Rule 34(b)(1)(C), Chavez requests that any electronically stored information be produced in the form of CD-ROM discs in searchable pdf format, with no encryption or impediment to excerpting pages electronically for filing with the Court.

3.   Standard "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories of the request."  Fed. R. Civ. P. 34(b)(2)(E)(I).

4.   Where any of the following requests seeks an internal

rule, guideline, protocol or other similar criterion, responsive documents shall be produced regardless of whether they are contained in a claims manual or are compiled in some other form.

5.   The following requests should be interpreted to specifically include any correspondence created prior to August 2, 2018 between Standard and any attorney related to Chavez's Claim. As explained by the Fifth Circuit, "a plan's administrator owes a fiduciary duty to the plan's beneficiaries, not its sponsor." Wildbur v. ARCO Chem. Co., 974 F.2d 631, 645 (5th Cir. 1992).

> When an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator. . . . Therefore, an ERISA fiduciary cannot asset the attorney-client privilege against a plan beneficiary about legal advice dealing with plan administration.

Id.

6.   Chavez has provided below a few citations to authorities supporting the discoverability of the requested information. Chavez encourages Standard to review those authorities and to provide the requested information, rather than disputing its discovery obligations and forcing a ruling from the Court.

## **DEFINITIONS**

1.   As used herein, "Chavez's Claim" shall mean his claim for disability benefits that is the subject of this lawsuit.

2.   As used herein, "Standard" shall mean Standard Insurance Company and shall include any person or entity acting on its behalf, including, but not limited to, any vendor, manager or staff.

3.   As used herein, "Complaint" shall mean Chavez's original complaint [ECF Doc. 1], filed on August 2, 2018.

4.   As used herein, "Answer" shall mean Standard's original answer [ECF Doc. 10] to the Complaint, which Standard filed on August 24, 2018.

5.   As used herein, "LTD" shall mean long term disability.

6.   As used herein, "Policy" shall mean "Group Long Term Disability Insurance Policy Number 642704-B."  (See Answer at ¶ 8.)

7.   As used herein, "Renewal Date" shall mean a renewal date as described in the Policy, which states that the Policy "may be renewed for successive renewal periods by the payment of the premium set by us on each renewal date," and states : "The length of each renewal period will be set by us, but will not be less than 12 months."

8.   As used herein, "Policy Form" shall mean all group policies issued by Standard in Texas (including, but not limited to the Policy) using a definition of "Other Limited Conditions" that, as in the Policy, includes "arthritis" and "sprains or strains of joints or muscles."  (See Complaint at ¶¶ 101-102, admitted in Answer at ¶¶ 101-102.)

9.   As used herein, "Marshall" shall mean Jennifer Marshall. (See Complaint at ¶ 132, admitted in Answer at ¶ 132.)

10.  As used herein, "Suzuki" shall mean Leo Suzuki.  (See Complaint at ¶ 148, admitted in Answer at ¶ 148.)

11.  As used herein, "Mandiberg" shall mean Joseph Mandiberg, M.D.  (See Complaint at ¶ 120, admitted in Answer at ¶ 120.)

12.  As used herein, "Volk" shall mean William Volk, M.D. (<u>See</u> Complaint at ¶ 158, admitted in Answer at ¶ 158.)

13.  As used herein, "Nix" shall mean Nix Door & Hardware Inc. (<u>See</u> Complaint at ¶ 2, admitted in Answer at ¶ 2.)

<u>**REQUESTS FOR PRODUCTION**</u>

Please produce the originals or copies of the following documents:

**A.**   <u>**Governing Documents**</u>.

1.  The Policy.

2.  The Standard document entitled "Certificate and Summary Plan Description Group Long Term Disability Insurance" for the Policy.

3.  Any summary plan description for the LTD benefits offered under the Policy.

4.  All notices and correspondence exchanged between Standard and Nix regarding the dates of each Renewal Date applicable to the Policy on or after June 1, 2011.[1]

5.  All notices and correspondence exchanged between Standard and Nix regarding any rate increase applicable to the Policy that occurred on or after June 1, 2011.[2]

---

[1] "For forms that include disability income protection coverage providing for periodic payments during disability due to sickness and/or accident, whether provided through a policy, certificate, or rider, this subchapter applies to forms offered, issued, renewed, or delivered on or after February 1, 2011."  28 TAC § 3.1201(c).

[2] "For forms issued or delivered prior to the effective date of this subchapter that do not contain a renewal date, this subchapter applies on or after the effective date of any rate increase applicable to the form or any change, modification, or amendment of

6.    All invoices, payment ledgers, and receipts for any insurance premiums charged to, or paid by, Nix for coverage under the Policy on or after June 1, 2011.[3]

**B.   Contractual Links with Those Involved in Chavez's Claim.**[4]

7.    All contracts governing the role played in Chavez's Claim by Marshall.

8.    All invoices, payment ledgers, and receipts for any services provided by Marshall with respect to Chavez's Claim.

9.    All correspondence with Marshall with respect to

---

the form occurring on or after June 1, 2011."  28 TAC § 3.1201(d).

[3]

See footnote 2.

[4]

The claimant in an ERISA case "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  See Crosby v. Louisiana Health Serv. & Indem. Co., 647 F.3d 258, 262 (5th Cir. 2011)(quoting Fed. R. Civ. P. 26(b)(1)).

Discovery of "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action.  Crosby, 647 F.3d at 263.  The court explained that it could "envision situations where evidence resolving these disputes may not be contained in the administrative record."  Id.

"Every employee benefit plan shall establish and maintain reasonable claim procedures."  29 C.F.R. § 2560.503-1(b).  Claim procedures must not be "administered in a way" that "unduly inhibits or hampers the initiation or processing of a claim."  29 C.F.R. § 2560.503-1(b)(3); see Koehler v. Aetna Health, Inc., 683 F.3d 182, 191 (5th Cir. 2012)(unreasonable claim procedures can serve as evidence of bad faith).

Facts demonstrating "procedural unreasonableness" may be significant on the question of whether ERISA benefits have been improperly denied.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 118 (2008).  Also considered are circumstances "where an insurance company administrator has a history of biased claims administration."  Id. at 117.

Discovery of the "existence and extent of a conflict of interest" is "relevant and thus permissible."  Crosby, 647 F.3d at 263.

Chavez's Claim.

    10.   All contracts governing the role played in Chavez's Claim by Suzuki.

    11.   All invoices, payment ledgers, and receipts for any services provided by Suzuki with respect to Chavez's Claim.

    12.   All correspondence with Suzuki with respect to Chavez's Claim.

    13.   All contracts governing the role played in Chavez's Claim by Mandiberg.

    14.   All invoices, payment ledgers, and receipts for any services provided by Mandiberg with respect to Chavez's Claim.

    15.   All correspondence with Mandiberg with respect to Chavez's Claim.

    16.   All contracts governing the role played in Chavez's Claim by Volk.

    17.   All invoices, payment ledgers, and receipts for any services provided by Volk with respect to Chavez's Claim.

    18.   All correspondence with Volk with respect to Chavez's Claim.

C.   __Internal Rules, Guidelines, Protocols or Similar Criteria__.[5]

19.   Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "hand condition is considered to be arthritis."

20.   Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "right shoulder rotator cuff tear is considered to be a sprain or strain of joints or muscle."

21.   Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to

---

[5]   "If an internal rule, guideline, protocol or other similar criterion was relied upon in making the adverse determination," then production of "a copy of the rule, guideline, protocol or other similar criterion will be provided free of charge to the claimant upon request."  29 C.F.R. § 2560.503-1(j)(5).

If an applicable rule, guideline, protocol or other similar criterion was in effect, but _not_ relied upon, then the required "reasonable claim procedures," 29 C.F.R. § 2560.503-1(b), would have been "administered in a way" that "unduly inhibits or hampers the initiation or processing of a claim," 29 C.F.R. § 2560.503-1(b)(3).  See Koehler, 683 F.3d at 191 (unreasonable claim procedures can serve as evidence of bad faith).  Discovery of "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action. Crosby, 647 F.3d at 263.

Facts demonstrating "procedural unreasonableness" may be significant on the question of whether ERISA benefits have been improperly denied.  Glenn, 554 U.S. at 118.  Also considered are circumstances "where an insurance company administrator has a history of biased claims administration."  Id. at 117.

Discovery of the "existence and extent of a conflict of interest" is "relevant and thus permissible."  Crosby, 647 F.3d at 263.

determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right hand and wrist are "classified as Other Limited Conditions."

22. Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right shoulder and biceps are "classified as Other Limited Conditions."

23. All correspondence, emails, meeting minutes, guidelines, policies, procedures, forms, and manuals, created or utilized by Standard on or after June 3, 2016, that address the interpretation of the following wording in the Policy:[6]

> Other Limited Conditions means . . . arthritis, . . . and sprains or strains of joints or muscles.

24. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff tear is considered to be a "sprain or strain of joints or muscle," as used in the Policy. (See Complaint at ¶¶ 101-102, admitted in Answer at ¶¶ 101-102.)

25. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the supraspinatus tendon is considered to be a "sprain or strain of

---

[6]

See 29 C.F.R. § 2560.503-1(b); Crosby, 647 F.3d at 263; Thomason v. Metropolitan Life Ins. Co., 2015 WL 1914557, at *5 (N.D. Tex. Apr. 27, 2015)(compelling answer to similar request for production).

joints or muscle," as used in the Policy.

26. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the infraspinatus tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

27. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

28. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

29. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a ruptured biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

30. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum, is considered to be a "sprain or strain of joints

or muscle," as used in the Policy.

31.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a torn, retracted, and unrepairable subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

32.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not an entirely-torn infraspinatus is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

33.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

34.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy. (See Complaint at ¶¶ 101-102, admitted in Answer at ¶¶ 101-102.)

35.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy.

36.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not osteomyelitis is considered to be "arthritis," as used in the Policy.

37.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not the debridement of bone cortex is considered to be "arthritis," as used in the Policy.

38.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not septic arthritis is considered to be "arthritis," as used in the Policy.

39.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the scaphoid bone from the wrist is considered to be "arthritis," as used in the Policy.

40.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the styloid process from the radius is considered to be "arthritis," as used in the Policy.

41.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove articular cartilage from the midcarpal joint is considered to be "arthritis,"

as used in the Policy.

42.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to fuse the midcarpal joint with screws and a bone graft is considered to be "arthritis," as used in the Policy.

43.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the triquetrum and lunate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

44.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the capitate and hamate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

45.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of the occupational title of "Carpenter."   (See Complaint at ¶ 25, admitted in Answer at ¶ 25.)

46.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of occupations with a  "Medium strength rating."  (See Complaint at ¶ 26, admitted in Answer at ¶ 26.)

47.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that applied to the completion or sending of a "Medical Referral" form, such as the ones dated July 5, 2017 and March 8, 2018 and provided to Mandiberg and Volk, respectively (see Complaint at ¶¶ 120, 158, admitted in Answer at ¶¶ 120, 158), including criteria for selecting (1) a medical specialty, (2) a particular consultant, (3) particular questions to ask, (4) the wording of any questions to ask, or (5) documents or medical records to provide for review.

48.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that governed the extent to which an assigned consultant could request additional information, documents or medical records in connection with preparing a "Physician Consultant Memo" such as the ones dated July 24, 2017 and March 19, 2018 and prepared by Mandiberg and Volk, respectively (see Complaint at ¶¶ 122, 160, admitted in Answer at ¶¶ 122, 160).

49.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Other Limited Conditions: Chronic Pain/Musculoskeletal/Connective Tissue Conditions."

50.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of what conditions are considered "Other Limited Conditions," as used in the Policy.

51.  Each internal rule, guideline, protocol or other similar

criterion in effect at Standard on or after June 3, 2016 entitled "Classification of Common Medical Conditions."

52.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of how medical conditions are classified.

53.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Diagnosis Information."

54.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff tear.

55.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the supraspinatus tendon.

56.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the infraspinatus tendon.

57.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the subscapularis tendon.

58.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the

biceps tendon.

59.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a ruptured biceps tendon.

60.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum.

61.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a torn, retracted, and unrepairable subscapularis tendon.

62.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for an entirely-torn infraspinatus.

63.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position.

64.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for staphylococcus aureus infection.

65.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for osteomyelitis.

66.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for debridement of bone cortex.

67.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for septic arthritis.

68.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the scaphoid bone from the wrist.

69.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the styloid process from the radius.

70.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove articular cartilage from the midcarpal joint.

71.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to fuse the midcarpal joint with screws and a bone graft.

72.   Each internal rule, guideline, protocol or other similar

criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the triquetrum and lunate bones after surgery to fuse them.

73.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the capitate and hamate bones after surgery to fuse them.

74.  Each internal rule, guideline, protocol or other similar criterion that would mitigate the fact that Standard would retain for its own use any premiums received in excess of benefits paid to claimants under the Policy (see Complaint at ¶ 106), such that denying claims for LTD benefits under the Policy could provide a financial gain to Standard.

75.  Each internal rule, guideline, protocol or other similar criterion governing any manner in which Standard audited, within the last five (5) years, the accuracy of its determinations of claims for disability benefits.

76.  Any internal rule, guideline, protocol or other similar criteria governing any manner in which Standard penalized, within the last five (5) years, any inaccurate determinations of claims for disability benefits.

77.  Each internal rule, guideline, protocol or other similar criterion that was relied upon in making a determination on Chavez's Claim.

78.  Each internal rule, guideline, protocol or other similar criterion that was governed Standard's handling of Chavez's Claim.

D.   __Criteria Governing Fiduciary Duties__.[7]

79.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

80.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had final

---

[7]   Under ERISA, fiduciaries are those with "any discretionary authority or discretionary responsibility in the administration" of the ERISA plan.  29 U.S.C. § 1002(21)(A).  For example, when an employee is designated "who has the final authority to authorize or disallow benefit payments in cases where a dispute exists as to the interpretation of plan provisions relating to eligibility for benefits," that employee "would be a fiduciary within the meaning of" 29 U.S.C. § 1002(21)(A).  29 C.F.R. § 2509.75-8.

Under ERISA, a fiduciary must "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries of the plan." __Glenn__, 554 U.S. at 115 (citations omitted).

A fundamental requirement under ERISA is a "full and fair review" by the fiduciary.  29 U.S.C. § 1133(2).  Such "full and fair review" must be in "accordance with  regulations of the Secretary [of Labor]." __Id__.  Those regulations provide: "Every employee benefit plan shall establish and maintain reasonable claim procedures." 29 C.F.R. § 2560.503-1(b).  Claim procedures must __not__ be "administered in a way" that "unduly inhibits or hampers the initiation or processing of a claim," 29 C.F.R. § 2560.503-1(b)(3).  __See__ __Koehler__, 683 F.3d at 191 (unreasonable claim procedures can serve as evidence of bad faith).

Discovery of "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action.  __Crosby__, 647 F.3d at 263.  See footnote 2 above regarding general aspects of (1) any "internal rule, guideline, protocol or other similar criterion," (2) "procedural unreasonableness," and (3) the "existence and extent of a conflict of interest."

authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

81.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall, with respect to discretionary claims processing of Chavez's Claim, was required to discharge her duties solely in the interests of the participants and beneficiaries of the plan.

82.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Marshall was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

83.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

84.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

85.  Each internal rule, guideline, protocol or other similar

criterion that governed or described the extent Suzuki, with respect to discretionary claims processing of Chavez's Claim, was required to discharge his duties solely in the interests of the participants and beneficiaries of the plan.

86.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Suzuki was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

87.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

88.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

89.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard, with respect to discretionary claims processing of Chavez's Claim, was required to discharge its duties solely in the interests of the participants and beneficiaries of the plan.

90.  Each internal rule, guideline, protocol or other similar

criterion that governed or described the extent that Standard was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

91.  Each internal rule, guideline, protocol or other similar criterion that governed or described what employee or employees had final authority to authorize or disallow benefit payments regarding any phase of Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

92.  Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Marshall in order to make any determination on Chavez's Claim.

93.  Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Martinez in order to make any determination on Chavez's Claim.

94.  Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim.

95.  Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

96.  Each internal rule, guideline, protocol or other similar

criterion that governed how the opinions of any IME provider would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

97.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim.

**E.   Criteria Governing Decisions Pursuant to Plan Documents**.[8]

98.   Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify that benefit claim determinations in connection with Chavez's Claim were made in accordance with governing plan documents and that the plan provisions have been applied consistently with respect to similarly situated claimants.

99.   Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify whether the evaluation of any diagnosis or condition in connection with Chavez's Claim would be

---

[8]
Claim procedures "will be deemed reasonable only if" they satisfy the following:

> The claims procedures contain administrative processes and safeguards designed to ensure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants.

29 C.F.R. § 2560.503-1(b)(5).  See footnote 2 above regarding general aspects of (1) any "internal rule, guideline, protocol or other similar criterion," (2) "reasonable claim procedures," (3) "procedural unreasonableness," and (4) the "existence and extent of a conflict of interest."

in accordance with governing plan documents and whether the plan provisions have been applied consistently in that way with respect to similarly situated claimants.

100. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Marshall in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

101. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

102. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

**F.    Other Relevant Documents.**[9]

103. All documents received from Nix in connection with Chavez's claim.

104. Each document that Standard relied upon in making a

---

[9]

Pursuant to 29 C.F.R. § 2560.503-1(h)(4), the claims procedures for reviewing the denial of a claim for disability benefits <u>must</u> comply with the requirements of paragraph (h)(2)(iii).  The cited provision requires, as part of a "full and fair review of a claim and adverse benefit determination," claim procedures that:

> (iii)   Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits.  Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section[.]

Said paragraph (m)(8) states:

> A document, record or other information shall be considered "relevant" to a claimant's claim if such document, record, or other information:
>
> (I)   Was relied upon in making the benefit determination;
>
> (ii) Was submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination;
>
> (iii)      Demonstrates compliance with the administrative processes and safeguards required pursuant to paragraph (b)(5) of this section in making the benefit determination; or
>
> (iv) In the case of . . . a plan providing disability benefits, constitutes a statement of policy of guidance with respect to the plan concerning the denied . . . benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination.

29 C.F.R. § 2560.503-1(m)(8).

benefit determination on Chavez's Claim.

105. Each document that was submitted, considered or generated in the course of making a determination on Chavez's Claim, without regard to whether such document, record or other information was relied upon in making that determination.

106. Each document constituting a statement of policy or guidance concerning the benefits available under the Policy for Chavez's condition, without regard to whether such statement was relied upon in making a benefit determination.

107. All correspondence or other documents exchanged between Standard and any attorney (other than Chavez's undersigned attorney) prior to August 2, 2018 concerning Chavez's Claim.

G.   <u>**Administrative Record**</u>.[10]

108.  The  administrative  record  compiled  by  Standard  with respect to Chavez's Claim.

109.  The  letter  dated  June  13,  2018  that  Chavez's  attorney sent Standard.  (<u>See</u> Complaint at ¶ 178, admitted in Answer at ¶ 178).

110.  All  documents  that  Standard  received  with  the  letter dated  June  13,  2018  that  Chavez's  attorney  sent  Standard  (<u>see</u> Complaint  at  ¶  178,  admitted  in  Answer  at  ¶  178,  including  the documents labeled as <u>Attachment 1</u> and <u>Attachment 2</u>.

111.  The  letter  dated  July  2,  2018  that  Standard  sent  to Chavez's attorney.  (<u>See</u> Complaint at ¶ 185, admitted in Answer at

---

[10]

"Before filing suit, the claimant's lawyer can add additional evidence to the administrative record <u>simply</u> <u>by submitting it</u> to the administrator in a manner that gives the administrator a fair opportunity to consider it."  <u>Vega v. National Life Ins. Servs., Inc.,</u> 188 F.3d 287, 300 (5th Cir. 1999)(<u>en banc</u>, emphasis added). "Thus, we have not in the past, nor do we now, set a particularly high bar to a party's seeking to introduce evidence into the administrative  record."  <u>Id</u>.   "We  hold  today  that  the administrative  record  consists  of  relevant  information  made available to the administrator <u>prior to the complainant's filing of a lawsuit</u> and in a manner that gives the administrator a fair opportunity to consider it."  <u>Id</u>.

"If  the  claimant  submits  additional  information  to  the administrator,  however,  and  requests  the  administrator  to <u>reconsider his decision</u>, that additional information should be treated  as  part  of  the  administrative  record."   <u>Id</u>.  (emphasis added).  The submission of such additional documents is permissible because of "<u>a concern that a self-interested administrator can manipulate  this  process  unfairly</u> (e.g.,  by  permitting  the administrator <u>to exclude from the record information that would weigh in favor of granting the claim</u>)."  <u>Id</u>. (emphasis added). "Finally, we have made plain in this opinion that the claimant only has an opportunity to make his record before he files suit in federal court, <u>it would be unfair to allow the administrator greater opportunity at making a record than the claimant enjoys</u>." <u>Id</u>. at 302 n.13 (emphasis added).

¶ 185).

Respectfully submitted,

/s/ James L. Johnson
James L. Johnson
Texas Bar No. 10742020

THE JOHNSON LAW FIRM
10935 Estate Lane, Suite 268
Dallas, Texas 75238
Telephone:     214/363-1629
Telecopier:    214/363-9173
Email:
james@jamesljohnsondallasattorney.com

ATTORNEY FOR PLAINTIFF
JOSE CHAVEZ

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on September 12, 2018, I served the foregoing document on Ryan K. McComber, counsel for Standard, by Priority Mail.

/s/ James L. Johnson
James L. Johnson

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| JOSE CHAVEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | §     C.A. No. 3:18-cv-02013-N |
| | § |
| STANDARD INSURANCE COMPANY, | § |
| | § |
| Defendant. | § |
| | § |

## DEFENDANT'S OBJECTIONS AND RESPONSES TO
## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendant Standard Insurance Company ("Defendant" or "Standard") serves its objections

and responses to Plaintiff's First Request for Production. The objections and responses are

attached.

Respectfully submitted,

By: _____

Ryan K. McComber
State Bar No. 24041428
ryan.mccomber@figdav.com
Cameron E. Jean
State Bar No. 24097883
cameron.jean@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202-3776
(214) 939-2000
(214) 939-2090 (Facsimile)

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that I served all attorneys deemed to accept service of the above-referenced document via certified mail, return receipt requested, on October 12, 2018

_____

Ryan K. McComber

## RESPONSES TO REQUESTS FOR PRODUCTION

1.  The Policy.

    **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record, subject to the entry of a protective order.

2.  The Standard document entitled "Certificate and Summary Plan Description Group Long Term Disability Insurance" for the Policy.

    **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record, subject to the entry of a protective order.

3.  Any summary plan description for the LTD benefits offered under the Policy.

    **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record, subject to the entry of a protective order.

4.  All notices and correspondence exchanged between Standard and Nix regarding the dates of each Renewal Date applicable to the Policy on or after June 1, 2011.

    **RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine whether the Texas ban on discretionary clauses applies to the subject Policy. *See* TEX. INS. CODE § 1701.062; 28 TEX. ADMIN. CODE § 3.1201.3. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*.

5.  All notices and correspondence exchanged between Standard and Nix regarding any rate increase applicable to the Policy that occurred on or after June 1, 2011.

    **RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine whether the Texas ban on discretionary clauses applies to the subject Policy. *See* TEX. INS. CODE § 1701.062; 28 TEX. ADMIN. CODE § 3.1201.3. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*.

6.  All invoices, payment ledgers, and receipts for any insurance premiums charged to, or paid by, Nix for coverage under the Policy on or after June 1, 2011.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc). For purposes of this action only, Standard admits that the

applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

7.   All contracts governing the role played in Chavez's Claim by Marshall.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

8.   All invoices, payment ledgers, and receipts for any services provided by Marshall with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

9.   All correspondence with Marshall with respect to Chavez's Claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

10.   All contracts governing the role played in Chavez's Claim by Suzuki.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

11.   All invoices, payment ledgers, and receipts for any services provided by Suzuki with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and

not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

12.   All correspondence with Suzuki with respect to Chavez's Claim.

      **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

13.   All contracts governing the role played in Chavez's Claim by Mandiberg.

      **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

14.   All invoices, payment ledgers, and receipts for any services provided by Mandiberg with respect to Chavez's Claim.

      **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

15.   All correspondence with Mandiberg with respect to Chavez's Claim.

      **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

16.   All contracts governing the role played in Chavez's Claim by Volk.

      **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate

because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

17.    All invoices, payment ledgers, and receipts for any services provided by Volk with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

18.    All correspondence with Volk with respect to Chavez's Claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

19.    Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "hand condition is considered to be arthritis."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

20.    Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "right shoulder rotator cuff tear is considered to be a sprain or strain of joints or muscle."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

21.    Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right hand and wrist are "classified as Other Limited

Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

22.    Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right shoulder and biceps are "classified as Other Limited Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

23.    All correspondence, emails, meeting minutes, guidelines, policies, procedures, forms, and manuals, created or utilized by Standard on or after June 3, 2016, that address the interpretation of the following wording in the Policy:  Other Limited Conditions means . . . arthritis, . . . and sprains or strains of joints or muscles.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

24.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff tear is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

25.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the supraspinatus tendon is considered to be a "sprain or strain of joints or muscle," as used in

the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

26. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the infraspinatus tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

27. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

28. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

29. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a ruptured biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

30.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum, is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

31.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a torn, retracted, and unrepairable subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

32.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not an entirely-torn infraspinatus is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

33.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

34.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

35.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

36.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not osteomyelitis is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

37.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not the debridement of bone cortex is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary

information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

38.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not septic arthritis is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

39.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the scaphoid bone from the wrist is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

40.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the styloid process from the radius is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

41.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove articular cartilage from the midcarpal joint is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

42. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to fuse the midcarpal joint with screws and a bone graft is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

43. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the triquetrum and lunate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

44. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the capitate and hamate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

45. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of the occupational title of "Carpenter."

    **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

46. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of occupations with a "Medium strength rating."

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

47.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that applied to the completion or sending of a "Medical Referral" form, such as the ones dated July 5, 2017 and March 8, 2018 and provided to Mandiberg and Volk, respectively (see Complaint at ¶¶ 120, 158, admitted in Answer at ¶¶ 120, 158), including criteria for selecting (1) a medical specialty, (2) a particular consultant, (3) particular questions to ask, (4) the wording of any questions to ask, or (5) documents or medical records to provide for review.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents, subject to the entry of a protective order.

48.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that governed the extent to which an assigned consultant could request additional information, documents or medical records in connection with preparing a "Physician Consultant Memo" such as the ones dated July 24, 2017 and March 19, 2018 and prepared by Mandiberg and Volk, respectively (see Complaint at ¶¶ 122, 160, admitted in Answer at ¶¶ 122, 160).

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Standard has no responsive documents.

49.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Other Limited Conditions: Chronic Pain/Musculoskeletal/Connective Tissue Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

50.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of what conditions are considered "Other Limited Conditions," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary

information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

51. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Classification of Common Medical Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

52. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of how medical conditions are classified.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

53. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Diagnosis Information."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

54. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff tear.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

55. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the supraspinatus tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

56. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the infraspinatus tendon.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

57. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the subscapularis tendon.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

58. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the biceps tendon.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

59. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a ruptured biceps tendon.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents

relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

60.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information.  Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

61.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a torn, retracted, and unrepairable subscapularis tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information.  Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

62.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for an entirely-torn infraspinatus.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information.  Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

63.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information.  Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

64.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for staphylococcus aureus infection.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

65.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for osteomyelitis.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

66.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for debridement of bone cortex.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

67.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for septic arthritis.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

68.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the scaphoid bone from the wrist.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence.

Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

69.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the styloid process from the radius.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

70.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove articular cartilage from the midcarpal joint.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

71.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to fuse the midcarpal joint with screws and a bone graft.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

72.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the triquetrum and lunate bones after surgery to fuse them.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the

closing of Plaintiff's claim, subject to the entry of a protective order.

73.  Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the capitate and hamate bones after surgery to fuse them.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

74.  Each internal rule, guideline, protocol or other similar criterion that would mitigate the fact that Standard would retain for its own use any premiums received in excess of benefits paid to claimants under the Policy (see Complaint at ¶ 106), such that denying claims for LTD benefits under the Policy could provide a financial gain to Standard.

**RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

75.  Each internal rule, guideline, protocol or other similar criterion governing any manner in which Standard audited, within the last five (5) years, the accuracy of its determinations of claims for disability benefits.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

76.  Any internal rule, guideline, protocol or other similar criteria governing any manner in which Standard penalized, within the last five (5) years, any inaccurate determinations of claims for disability benefits.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Standard has no responsive documents.

77.     Each internal rule, guideline, protocol or other similar criterion that was relied upon in making a determination on Chavez's Claim.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

78.     Each internal rule, guideline, protocol or other similar criterion that was governed Standard's handling of Chavez's Claim.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents, subject to the entry of a protective order.

79.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

80.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to

determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

81.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall, with respect to discretionary claims processing of Chavez's Claim, was required to discharge her duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

82.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Marshall was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

83.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to

decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

84.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

85.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki, with respect to discretionary claims processing of Chavez's Claim, was required to discharge his duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

86. Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Suzuki was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

87. Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

88. Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover,

Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

89.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard, with respect to discretionary claims processing of Chavez's Claim, was required to discharge its duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

90.  Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Standard was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

91.     Each internal rule, guideline, protocol or other similar criterion that governed or described
        what employee or employees had final authority to authorize or disallow benefit payments
        regarding any phase of Chavez's Claim, including, but not limited to, authority to interpret
        plan terms or to decide questions of fact in connection with the interpretation or application
        of plan terms.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and
        not reasonably calculated to lead to the discovery of admissible evidence. Moreover,
        Standard objects to this Request to the extent it seeks confidential or proprietary
        information. Finally, Standard objects to this Request to the extent it seeks discovery to
        determine the existence of a conflict of interest, which is neither necessary or appropriate
        because the applicable standard of review is *de novo* in this ERISA case. Subject to its
        objections, Standard agrees to produce the Policy, which is included in the administrative
        record, subject to the entry of a protective order. The Policy is the only contract or other
        instrument under which the plan governing Plaintiff's claim was established or operated.
        Subject to its objections, Standard also agrees to produce responsive documents relevant
        to how Standard interpreted the Policy and the specific terms applicable to the closing of
        Plaintiff's claim, subject to the entry of a protective order.

92.     Each internal rule, guideline, protocol or other similar criterion that governed how the
        opinions of any medical consultant would be analyzed and applied by Marshall in order to
        make any determination on Chavez's Claim.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and
        not reasonably calculated to lead to the discovery of admissible evidence. Moreover,
        Standard objects to this Request to the extent it seeks confidential or proprietary
        information. Finally, Standard objects to this Request to the extent it seeks discovery to
        determine the existence of a conflict of interest, which is neither necessary or appropriate
        because the applicable standard of review is *de novo* in this ERISA case. Subject to its
        objections, Standard agrees to produce the Policy, which is included in the administrative
        record, subject to the entry of a protective order. The Policy is the only contract or other
        instrument under which the plan governing Plaintiff's claim was established or operated.
        Subject to its objections, Standard also agrees to produce responsive documents relevant
        to how Standard interpreted the Policy and the specific terms applicable to the closing of
        Plaintiff's claim, subject to the entry of a protective order.

93.     Each internal rule, guideline, protocol or other similar criterion that governed how the
        opinions of any medical consultant would be analyzed and applied by Martinez in order to
        make any determination on Chavez's Claim.

        **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and
        not reasonably calculated to lead to the discovery of admissible evidence. Moreover,
        Standard objects to this Request to the extent it seeks confidential or proprietary
        information. Finally, Standard objects to this Request to the extent it seeks discovery to
        determine the existence of a conflict of interest, which is neither necessary or appropriate
        because the applicable standard of review is *de novo* in this ERISA case. Subject to its
        objections, Standard agrees to produce the Policy, which is included in the administrative

record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

94.     Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

95.     Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

96.     Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any IME provider would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary

information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

97.    Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Finally, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. Subject to its objections, Standard agrees to produce the Policy, which is included in the administrative record, subject to the entry of a protective order. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Subject to its objections, Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

98.    Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify that benefit claim determinations in connection with Chavez's Claim were made in accordance with governing plan documents and that the plan provisions have been applied consistently with respect to similarly situated claimants.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

99.    Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify whether the evaluation of any diagnosis or condition in connection with Chavez's Claim would be in accordance with governing plan documents and whether the plan provisions have been applied consistently in that way with respect to similarly situated claimants.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

100. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Marshall in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

101. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

102. Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

103. All documents received from Nix in connection with Chavez's claim.

    **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

104. Each document that Standard relied upon in making a benefit determination on Chavez's Claim.

    **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

105. Each document that was submitted, considered or generated in the course of making a determination on Chavez's Claim, without regard to whether such document, record or other information was relied upon in making that determination.

    **RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record, subject to the entry of a protective order.

106. Each document constituting a statement of policy or guidance concerning the benefits available under the Policy for Chavez's condition, without regard to whether such statement was relied upon in making a benefit determination.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Subject to its objections, Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

107. All correspondence or other documents exchanged between Standard and any attorney (other than Chavez's undersigned attorney) prior to August 2, 2018 concerning Chavez's Claim.

    **RESPONSE:** Standard objects to this Request because it seeks information protected from disclosure by the attorney-client and/or work-product privileges. Subject to its objections, Standard agrees to produce a privilege log identifying any such communications during the relevant time period.

108. The administrative record compiled by Standard with respect to Chavez's Claim.

    **RESPONSE:** Standard agrees to produce the administrative record, subject to the entry of a protective order.

109. The letter dated June 13, 2018 that Chavez's attorney sent Standard.

    **RESPONSE:** Standard agrees to produce the responsive document.

110.   All documents that Standard received with the letter dated June 13, 2018 that Chavez's attorney sent Standard.

    **RESPONSE:** Standard agrees to produce the responsive document.

111.   The letter dated July 2, 2018 that Standard sent to Chavez's attorney.

    **RESPONSE:** Standard agrees to produce the responsive document.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOSE CHAVEZ,                          §
                                      §
        Plaintiff,                    §
                                      §
v.                                    §        C.A. No. 3:18-cv-02013-N
                                      §
STANDARD INSURANCE COMPANY,           §
                                      §
        Defendant.                    §
                                      §

## DEFENDANT'S FIRST AMENDED OBJECTIONS AND RESPONSES
## TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION

Defendant Standard Insurance Company ("Defendant" or "Standard") serves its first

amended objections and responses to Plaintiff's First Request for Production.  The amended

objections and responses are attached.

Respectfully submitted,

By: _____

Ryan K. McComber
State Bar No. 24041428
ryan.mccomber@figdav.com
Cameron E. Jean
State Bar No. 24097883
cameron.jean@figdav.com

**FIGARI + DAVENPORT, LLP**
901 Main Street, Suite 3400
Dallas, Texas 75202-3776
(214) 939-2000
(214) 939-2090 (Facsimile)

ATTORNEYS FOR DEFENDANT
STANDARD INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that I served all attorneys deemed to accept service of the above-referenced document via certified mail, return receipt requested, on November 5, 2018

_____
Ryan K. McComber

## AMENDED RESPONSES TO REQUESTS FOR PRODUCTION

1.   The Policy.

     **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record.

2.   The Standard document entitled "Certificate and Summary Plan Description Group Long Term Disability Insurance" for the Policy.

     **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record.

3.   Any summary plan description for the LTD benefits offered under the Policy.

     **RESPONSE:** Standard agrees to produce the subject document, which is included in the administrative record.

4.   All notices and correspondence exchanged between Standard and Nix regarding the dates of each Renewal Date applicable to the Policy on or after June 1, 2011.

     **RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine whether the Texas ban on discretionary clauses applies to the subject Policy. *See* TEX. INS. CODE § 1701.062; 28 TEX. ADMIN. CODE § 3.1201.3. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo.*

5.   All notices and correspondence exchanged between Standard and Nix regarding any rate increase applicable to the Policy that occurred on or after June 1, 2011.

     **RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine whether the Texas ban on discretionary clauses applies to the subject Policy. *See* TEX. INS. CODE § 1701.062; 28 TEX. ADMIN. CODE § 3.1201.3. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo.*

6.   All invoices, payment ledgers, and receipts for any insurance premiums charged to, or paid by, Nix for coverage under the Policy on or after June 1, 2011.

     **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999) (en banc). For purposes of this action only, Standard admits that the

applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

7.    All contracts governing the role played in Chavez's Claim by Marshall.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Specifically, Standard reads this Request as seeking Marshall's employment contract with Standard, if any, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.*, No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception).

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated, as Standard has no employment contract with Marshall.

8.    All invoices, payment ledgers, and receipts for any services provided by Marshall with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, such as information regarding Marshall's pay. Specifically, Standard reads this Request as seeking information regarding pay received from Standard specific to Plaintiff's claim, if any, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

9.    All correspondence with Marshall with respect to Chavez's Claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

10.   All contracts governing the role played in Chavez's Claim by Suzuki.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Specifically, Standard reads this Request as seeking Suzuki's employment contract with Standard, if any, and answers this Request based on this understanding.

   Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.,* No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception).

   Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated, as Standard has no employment contract with Suzuki.

11.   All invoices, payment ledgers, and receipts for any services provided by Suzuki with respect to Chavez's Claim.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, such as information regarding Suzuki's pay. Specifically, Standard reads this Request as seeking information regarding pay received from Standard specific to Plaintiff's claim, if any, and answers this Request based on this understanding.

   Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega,* 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

12.   All correspondence with Suzuki with respect to Chavez's Claim.

   **RESPONSE:** Standard objects to this request to the extent it seeks documents or communications protected from disclosure by the attorney-client or work product privileges, which will be identified by privilege log. Standard agrees to produce the non-privileged responsive documents, which are included in the administrative record.

13. All contracts governing the role played in Chavez's Claim by Mandiberg.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information regarding how Standard compensates its physician consultants. Specifically, Standard reads this Request as seeking Mandiberg's Independent Contractor's Agreement with Standard, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.,* No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception, but such agreements were irrelevant to the abuse of discretion inquiry in any event).

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

14. All invoices, payment ledgers, and receipts for any services provided by Mandiberg with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information regarding how Standard compensates its physician consultants. Specifically, Standard reads this Request as seeking information regarding pay received from Standard specific to Plaintiff's claim, if any, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.,* No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception, but such agreements were irrelevant to the abuse of discretion inquiry in any event).

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

15. All correspondence with Mandiberg with respect to Chavez's Claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

16. All contracts governing the role played in Chavez's Claim by Volk.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information regarding how Standard compensates its physician consultants. Specifically, Standard reads this Request as seeking Volk's Independent Contractor's Agreement with Standard, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.,* No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception, but such agreements were irrelevant to the abuse of discretion inquiry in any event).

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

17. All invoices, payment ledgers, and receipts for any services provided by Volk with respect to Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information regarding how Standard compensates its physician consultants. Specifically, Standard reads this Request as seeking information regarding pay received from Standard specific to Plaintiff's claim, if any, and answers this Request based on this understanding.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard objects to this Request to the extent it seeks discovery to determine the existence of a conflict of interest, which is neither necessary or appropriate because the applicable standard of review is *de novo* in this ERISA case. *See Alexander v. Hartford Life & Acc. Ins. Co.,* No. 3-07-CV-1486-M, 2008 WL 906786, at *1 (N.D. Tex. Apr. 3, 2008) (holding that the identical request implicated the conflict of interest exception, but such agreements were irrelevant to the abuse of discretion inquiry in any event).

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated.

18.    All correspondence with Volk with respect to Chavez's Claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

19.    Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "hand condition is considered to be arthritis."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

20.    Each internal rule, guideline, protocol or other similar criterion that Marshall (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated February 12, 2018) that Chavez's "right shoulder rotator cuff tear is considered to be a sprain or strain of joints or muscle."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

21.    Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right hand and wrist are "classified as Other Limited Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not

limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

22.    Each internal rule, guideline, protocol or other similar criterion that Suzuki (or anyone else at Standard) used to determine (as stated in Standard's denial letter dated March 23, 2018) that the conditions affecting Chavez's right shoulder and biceps are "classified as Other Limited Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

23.    All correspondence, emails, meeting minutes, guidelines, policies, procedures, forms, and manuals, created or utilized by Standard on or after June 3, 2016, that address the interpretation of the following wording in the Policy: Other Limited Conditions means . . . arthritis, . . . and sprains or strains of joints or muscles.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

24.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff tear is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not

limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

25. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the supraspinatus tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

26. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a full-thickness tear of the infraspinatus tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

27. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this

Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

28. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not partial tearing of the biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

29. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a ruptured biceps tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

30. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum, is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not

limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

31.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a torn, retracted, and unrepairable subscapularis tendon is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

32.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not an entirely-torn infraspinatus is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

33.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position is considered to be a "sprain or strain of joints or muscle," as used in the Policy.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this

Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

34.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

35.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not a staphylococcus aureus infection is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

36.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not osteomyelitis is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by

Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

37. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not the debridement of bone cortex is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

38. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not septic arthritis is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

39. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the scaphoid bone from the wrist is considered to be "arthritis," as used in the Policy.

    **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the

closing of Plaintiff's claim, subject to the entry of a protective order.

40.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove the styloid process from the radius is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

41.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to remove articular cartilage from the midcarpal joint is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

42.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not surgery to fuse the midcarpal joint with screws and a bone graft is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

43.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the triquetrum and lunate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

44.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of whether or not non-union between the capitate and hamate bones after surgery to fuse them is considered to be "arthritis," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

45.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of the occupational title of "Carpenter."

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

46.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of the physical demands and strength requirements of occupations with a "Medium strength rating."

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

47.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that applied to the completion or sending of a "Medical Referral" form, such as the ones dated July 5, 2017 and March 8, 2018 and provided to Mandiberg and Volk, respectively (see Complaint at ¶¶ 120, 158, admitted in Answer at ¶¶ 120, 158), including criteria for selecting (1) a medical specialty, (2) a particular consultant, (3) particular questions to ask, (4) the wording of any questions to ask, or (5) documents or medical records to provide for review.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

48.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that governed the extent to which an assigned consultant could request additional information, documents or medical records in connection with preparing a "Physician Consultant Memo" such as the ones dated July 24, 2017 and March 19, 2018 and prepared by Mandiberg and Volk, respectively (see Complaint at ¶¶ 122, 160, admitted in Answer at ¶¶ 122, 160).

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information. Standard has no responsive documents.

49.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Other Limited Conditions: Chronic Pain/Musculoskeletal/Connective Tissue Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

50.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of what conditions are considered "Other Limited Conditions," as used in the Policy.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

51.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Classification of Common Medical Conditions."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

52.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the issue of how medical conditions are classified.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

53.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 entitled "Diagnosis Information."

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

54. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff tear.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

55. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the supraspinatus tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

56. Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a full-thickness tear of the infraspinatus tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and

other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

57.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the subscapularis tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

58.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for partial tearing of the biceps tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

59.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a ruptured biceps tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not

limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

60.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a biceps tendon that is ruptured and retracted, with a "stump" that remains attached to the superior labrum.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

61.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a torn, retracted, and unrepairable subscapularis tendon.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

62.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for an entirely-torn infraspinatus.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents

relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

63.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for a rotator cuff that is so damaged as to require three SwiveLock anchors (or similar devices) in an attempt to position it in proper position.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

64.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for staphylococcus aureus infection.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

65.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for osteomyelitis.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

66.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for debridement of bone cortex.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

67.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for septic arthritis.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

68.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the scaphoid bone from the wrist.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

69.     Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove the styloid process from the radius.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

70.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to remove articular cartilage from the midcarpal joint.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

71.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for surgery to fuse the midcarpal joint with screws and a bone graft.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

72.    Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the triquetrum and lunate bones after surgery to fuse them.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence.

Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

73.   Each internal rule, guideline, protocol or other similar criterion in effect at Standard on or after June 3, 2016 that addressed the diagnosis information for non-union between the capitate and hamate bones after surgery to fuse them.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

74.   Each internal rule, guideline, protocol or other similar criterion that would mitigate the fact that Standard would retain for its own use any premiums received in excess of benefits paid to claimants under the Policy (see Complaint at ¶ 106), such that denying claims for LTD benefits under the Policy could provide a financial gain to Standard.

**RESPONSE:** Standard objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, and without limitation, this Request seeks discovery to determine the existence of a conflict of interest, which is a factor to be considered in determining whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, conflict discovery is neither necessary nor appropriate in this case.

75.   Each internal rule, guideline, protocol or other similar criterion governing any manner in which Standard audited, within the last five (5) years, the accuracy of its determinations of claims for disability benefits.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and

other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

76.  Any internal rule, guideline, protocol or other similar criteria governing any manner in which Standard penalized, within the last five (5) years, any inaccurate determinations of claims for disability benefits.

 **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to claims manuals and other confidential documents utilized by Standard in determining claims. Standard has no responsive documents.

77.  Each internal rule, guideline, protocol or other similar criterion that was relied upon in making a determination on Chavez's Claim.

 **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

78.  Each internal rule, guideline, protocol or other similar criterion that was governed Standard's handling of Chavez's Claim.

 **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Specifically, Standard reads this Request as seeking the confidential claims manuals and other confidential documents applicable to the determination of Plaintiff's claim, if any, and answers this Request based on this understanding. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

79.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

80.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the

closing of Plaintiff's claim, subject to the entry of a protective order.

81.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Marshall, with respect to discretionary claims processing of Chavez's Claim, was required to discharge her duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

82.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Marshall was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the

closing of Plaintiff's claim, subject to the entry of a protective order.

83.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

84.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents

relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

85.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Suzuki, with respect to discretionary claims processing of Chavez's Claim, was required to discharge his duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

86.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Suzuki was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents

relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

87.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had discretionary authority or discretionary responsibility over any aspect of Chavez's Claim, including, but not limited to, discretion to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

88.   Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard had final authority to authorize or disallow benefit payments regarding Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The

Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

89.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent Standard, with respect to discretionary claims processing of Chavez's Claim, was required to discharge its duties solely in the interests of the participants and beneficiaries of the plan.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

90.     Each internal rule, guideline, protocol or other similar criterion that governed or described the extent that Standard was required to administer claim procedures in a way that did not unduly inhibit or hamper the processing of Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The

Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

91.   Each internal rule, guideline, protocol or other similar criterion that governed or described what employee or employees had final authority to authorize or disallow benefit payments regarding any phase of Chavez's Claim, including, but not limited to, authority to interpret plan terms or to decide questions of fact in connection with the interpretation or application of plan terms.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

92.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Marshall in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

93.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Martinez in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

94.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The

Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

95.    Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

96.    Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any IME provider would be analyzed and applied by Fox in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's

claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

97.     Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.

Standard further objects to this Request because it is neither relevant to the claim or defense of any party, nor reasonably calculated to lead to the discovery of admissible evidence. Specifically, this Request seeks discovery regarding whether an administrator abused its discretion in denying a claim. *See Vega*, 188 F.3d at 297. For purposes of this action only, Standard admits that the applicable standard of review in this ERISA case is *de novo*. Accordingly, such discovery is neither necessary nor appropriate in this case.

Standard agrees to produce the Policy, which is included in the administrative record. The Policy is the only contract or other instrument under which the plan governing Plaintiff's claim was established or operated. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

98.     Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify that benefit claim determinations in connection with Chavez's Claim were made in accordance with governing plan documents and that the plan provisions have been applied consistently with respect to similarly situated claimants.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

99.     Each internal rule, guideline, protocol or other similar criterion that provided administrative processes and safeguards designed to ensure and to verify whether the evaluation of any diagnosis or condition in connection with Chavez's Claim would be in accordance with governing plan documents and whether the plan provisions have been applied consistently in that way with respect to similarly situated claimants.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

100.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Marshall in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

101.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Suzuki in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

102.   Each internal rule, guideline, protocol or other similar criterion that governed how the opinions of any medical consultant would be analyzed and applied by Standard in order to make any determination on Chavez's Claim in accordance with governing plan documents and by application of the plan provisions consistent with their application to similarly situated claimants.

   **RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims.   Standard agrees to produce

responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

103.   All documents received from Nix in connection with Chavez's claim.

**RESPONSE:** Standard agrees to produce the subject documents, which are included in the administrative record.

104.   Each document that Standard relied upon in making a benefit determination on Chavez's Claim.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce the administrative record. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

105.   Each document that was submitted, considered or generated in the course of making a determination on Chavez's Claim, without regard to whether such document, record or other information was relied upon in making that determination.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce the administrative record. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

106.   Each document constituting a statement of policy or guidance concerning the benefits available under the Policy for Chavez's condition, without regard to whether such statement was relied upon in making a benefit determination.

**RESPONSE:** Standard objects that this Request is overly broad, vague, ambiguous, duplicative, and not reasonably calculated to lead to the discovery of admissible evidence. Moreover, Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce the administrative record. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

107. All correspondence or other documents exchanged between Standard and any attorney (other than Chavez's undersigned attorney) prior to August 2, 2018 concerning Chavez's Claim.

   **RESPONSE:** Standard objects to this Request because it seeks information protected from disclosure by the attorney-client and/or work product privileges. Standard agrees to produce a privilege log identifying any such communications during the relevant time period.

108. The administrative record compiled by Standard with respect to Chavez's Claim.

   **RESPONSE:** Standard objects to this Request to the extent it seeks confidential or proprietary information, including but not limited to confidential claims manuals and other confidential documents utilized by Standard in determining claims. Standard agrees to produce the administrative record. Standard also agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiff's claim, subject to the entry of a protective order.

109. The letter dated June 13, 2018 that Chavez's attorney sent Standard.

   **RESPONSE:** Standard agrees to produce the responsive document.

110. All documents that Standard received with the letter dated June 13, 2018 that Chavez's attorney sent Standard.

   **RESPONSE:** Standard agrees to produce the responsive document.

111. The letter dated July 2, 2018 that Standard sent to Chavez's attorney.

   **RESPONSE:** Standard agrees to produce the responsive document.

**James L. Johnson**

| | |
|---|---|
| **From:** | James L. Johnson [james@jamesljohnsondallasattorney.com] |
| **Sent:** | Friday, November 02, 2018 1:53 PM |
| **To:** | 'Ryan K. McComber' |
| **Cc:** | 'Cameron E. Jean' |
| **Subject:** | RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard |

OK, thanks.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

***************************************************************************************************
***********************************************************

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Friday, November 02, 2018 12:25 PM
**To:** James L. Johnson
**Cc:** Cameron E. Jean
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

James,

I am finalizing our amended discovery responses to address the issues we discussed on our call, and am having a CD of documents prepared to send to you. I will try to get it out today, but I will let you know if I cannot get it out and will send these items to you early next week.

Thanks, Ryan

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Friday, November 2, 2018 11:28 AM
**To:** Ryan K. McComber <ryan.mccomber@figdav.com>
**Cc:** Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

And when may I expect to receive your update?

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Thursday, November 01, 2018 12:53 PM
**To:** James L. Johnson
**Cc:** Cameron E. Jean; Ryan K. McComber
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

James,

Thank you for following up on this.  I just got off another call with my client and will update you on our positions on the issues we discussed during our call later today.

Thanks again, Ryan

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Wednesday, October 31, 2018 1:37 PM
**To:** Ryan K. McComber <ryan.mccomber@figdav.com>
**Cc:** Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

When will you be advising me of Standard's position on the discovery requests listed in my October 18 email, plus RFP # 108 from my October 21 email?

According to your October 19 email, you were back in the office yesterday.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Thursday, October 25, 2018 4:51 PM
**To:** 'Ryan K. McComber'
**Cc:** 'Cameron E. Jean'
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

When we discussed RFP No. 107 (the privilege log issue) and RFP Nos. 109-111,  it sounded to me as though you would handle those RFPs yourself, before you talked to Standard.  Thank you for the clarification.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax


*****************************************************************************************
*************************************************************

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Thursday, October 25, 2018 4:38 PM
**To:** James L. Johnson
**Cc:** Cameron E. Jean; Ryan K. McComber
**Subject:** Re: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard


James,


Thanks for your emails. I recall saying that I would need to speak with my client about getting you these documents without the protective order, and that I would get back to you as soon as I could (in light of the fact that I am out of the office and you already admitted that you have these specific documents in your possession already). I hope to get back to you sometime early next week. Thank you in advance for your professional courtesy as I work to resolve your concerns.

Thanks again, Ryan

Sent from my iPhone

On Oct 25, 2018, at 5:27 PM, James L. Johnson <james@jamesljohnsondallasattorney.com> wrote:

Ryan:

I'm asking again: When Standard will be providing the documents responsive to RFP Nos. 109-111, which on October 22, 2018 you also promised to provide?

I have neither received the documents nor any response to yesterday's email.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

*********************************************************************************
*********************************************************************************
*
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Wednesday, October 24, 2018 4:06 PM
**To:** 'Ryan K. McComber'
**Cc:** 'Cameron E. Jean'
**Subject:** FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

On Monday, October 22, 2018, you also promised that you would provide the documents responsive to RFP Nos. 109-111.

I have not yet received them.

When will you, or anyone else on Standard's behalf, be sending them to me?

Seriously, how complicated can it be to send 51 pages?

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Tuesday, October 23, 2018 4:55 PM
**To:** 'Ryan K. McComber'
**Cc:** 'Cameron E. Jean'
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

Thanks for the privilege log, which I received today.

I have not yet received, however, the documents responsive to RFP Nos. 109-111, which you also promised, yesterday, that you would provide.

By the way, as to RFP Nos. 7-8, 10-11, 13-14, 16-17, I am providing citations to two cases that Standard should consider.

The court ordered an insurer to produce contracts with its medical and vocational consultants in George-Botros v. Sun Life Assurance Co., 2017 W.L. 3730585, at *2 (N.D. Tex. Mar. 23, 2017)(under Texas law).  The RFPs in question sought:

> 4. Each contract, or other instrument, governing the role played in George-Botros's claim by Anita Bolster, R.N.

> 5. Each contract, or other instrument, governing the role played in George-Botros's claim by the "Vocational Rehabilitation Consultant" referenced in Sun Life's denial letter dated May 1, 2015.

> 6. Each contract, or other instrument, governing the role played in George-Botros's claim by David Hoenig, M.D.

> 7. Each contract, or other instrument, governing the role played in George-Botros's claim by Network Medical Review.

8. If not already produced in response to the foregoing, each contract, or other instrument, governing the role played in George-Botros's claim by any medical or vocational consultant.

Id.  Bill Davidoff is familiar with that case.

The court ordered discovery of an insurer's arrangements for "compensation for the claims and appeals specialists who handled Plaintiff's claim," such as "bonuses, pay increases or gain sharing" in Curtis v. Metropolitan Life Ins. Co., 2016 W.L. 687164, at *5 (N.D. Tex. Feb. 19, 2016)(under ERISA).

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

***************************************************************************
***************************************************************************
*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Monday, October 22, 2018 10:19 AM
**To:** James L. Johnson
**Cc:** Cameron E. Jean; Ryan K. McComber
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

I will call you at 3:00 and we can discuss.

Thanks, Ryan

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Sunday, October 21, 2018 5:11 PM
**To:** Ryan K. McComber <ryan.mccomber@figdav.com>
**Cc:** Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

Upon reviewing your email, I noticed an error in mine.  The discussion regarding RFP Nos. 1-3, 9, 12, 15, 18, 45-46, 103-105 should also include No. 108.

I expect to be available at 3 p.m. on Monday.  Please confirm if that is OK with you.

To have a meaningful conference, I ask that you begin by expressing Standard's position on the  matters set forth in my email (plus RFP No. 108 above).

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

**************************************************************************
**************************************************************************
*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Ryan K. McComber [mailto:ryan.mccomber@figdav.com]
**Sent:** Friday, October 19, 2018 4:34 PM
**To:** James L. Johnson
**Cc:** Cameron E. Jean; Ryan K. McComber
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

James,

Thank you for your e-mail. I look forwarding to discussing the issues you raised below.

While I respectfully disagree with your characterization of Standard's responses to your discovery, please let me know some times that work for your schedule that we can have a meaningful conference on same.  My schedule is open Monday afternoon, as well as Tuesday and Wednesday of next week.

Please also be advised that I will be out of the country from October 26-29, so if we are unable to connect on those days, we will have to try to schedule something for October 30. I appreciate your professional courtesy of not setting any hearings or conferences during the time period that I am out of town.

Thanks again and have a great weekend.

Ryan



| | **Ryan K. McComber** | ph: 214-939-2000 | Figari + Davenport, LLP |
| | ryan.mccomber@figdav.com | dd: 214-939-2014 | 901 Main Street, Suite 3400 |
| | **figdav.com** | fx: 214-939-2090 | Dallas, Texas 75202 |

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Thursday, October 18, 2018 5:57 PM
**To:** Ryan K. McComber <ryan.mccomber@figdav.com>

**Cc:** Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan:

Standard's responses to Chavez's discovery requests are deficient in a number of respects.  I have identified them below in hopes of avoiding a motion to compel using Judge Godbey's expedited discovery hearing docket.  Please promptly advise of Standard's position.

**Interrogatories**.

Nos. 1-3: Standard has limited its answers to claims under the "Policy," when the inquiries were broader, to claims under the "Policy Form," as defined within the interrogatories:

8.      As used herein, "Policy Form" shall mean all group policies issued by Standard in Texas (including, but not limited to the Policy) using a definition of "Other Limited Conditions" that, as in the Policy, includes "arthritis" and "sprains or strains of joints or muscles."  (See Complaint at ¶¶ 101-102, admitted in Answer at ¶¶ 101-102.)

As footnote 1 advised: "Evidence of how [Standard] has interpreted the governing LTD plan and/**or identical . . . provisions in other plans is relevant**, or reasonably likely to lead to other relevant information, so is discoverable."  See Thomason v. Metropolitan Life Ins. Co., 2015 WL 1914557, at **5-6 (N.D. Tex. Apr. 27, 2015)(compelling answer to similar interrogatories)." (Emphasis added.)  Standard cannot limit its answers, therefore, to just the policy issued to Nix Door & Hardware Inc.

No. 6: Standard's answer is part gibberish, and entirely conclusory.  Basic arithmetic and a calendar shows that from June 13 to August 2 is 50 days, not the "thirty (3) days" in Standard's answer.  Standard utterly failed to provide the requested factual basis for denying it had a "fair opportunity" to consider the June 13 submission, and for denying that Chavez satisfied the quoted criteria from Vega.  Standard's allegation that it "did not have the time or the ability to consider" the submission is just a naked conclusion.

No. 7: Standard's answer promises to produce a privilege log, but no log has been provided.

**Requests for Production**.

Nos. 1-3, 9, 12, 15, 18, 45-46, 103-105: Standard asserted **no objections**, yet failed to produce any responsive documents.  Instead, Standard agreed to produce them only "subject to the entry of a protective order."  Obviously, a protective order is available only after Standard has met its obligations under Rule 34(b)(2)(B) to "state with specificity the grounds for objecting to the request."

Nos. 7-8, 10-11, 13-14, 16-17: Standard's objections are baseless.  These requests are quite limited and specific, and seek relevant information.  While Standard's admission that Chavez's claim is governed by the de novo standard eliminates the conflict of interest issue, it does not eliminate the other procedural issues identified in footnote 4:

The claimant in an ERISA case "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  See Crosby v. Louisiana Health Serv. & Indem. Co., 647 F.3d 258, 262 (5th Cir. 2011)(quoting Fed. R. Civ. P. 26(b)(1)).

Discovery of "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action.  Crosby, 647 F.3d at 263.  The court explained that it could "envision situations where evidence resolving these disputes may not be contained in the administrative record."  Id.

"Every employee benefit plan shall establish and maintain reasonable claim procedures."  29 C.F.R. § 2560.503-1(b).  Claim procedures must not be "administered in a way" that "unduly inhibits or hampers the initiation or processing of a claim."  29 C.F.R. § 2560.503-1(b)(3); see Koehler v. Aetna Health, Inc., 683 F.3d 182, 191 (5th Cir. 2012)(unreasonable claim procedures can serve as evidence of bad faith).

Facts demonstrating "procedural unreasonableness" may be significant on the question of whether ERISA benefits have been improperly denied.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 118 (2008).  Also considered are circumstances "where an insurance company administrator has a history of biased claims administration."  Id. at 117.

Nos. 19-44, 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106: Standard asserted a number of objections, but agreed to produce responsive documents "subject to the entry of a protective order."  Because Standard has filed its motion (on the same day as its discovery responses were delivered), I will address these requests in the response I will file to Standaord's motion.

No. 107: Standard's response promises to produce a privilege log, but no log has been provided.

Nos. 109-111: Standard asserted **no objections**, and stated that it "agrees to produce the responsive document" in each case, yet failed to produce any responsive documents.  No. 108 is the administrative record.  Given the allegations in this case of Standard's sandbagging, willful blindness and gamesmanship (Complaint at ¶¶ 229-247), I would have expected Standard to enter this litigation on its best behavior.  Insurers in LTD cases customarily produce the administrative record with their initial disclosures (in the last many years on a CD-ROM disk) as a show of good faith.  Standard did not, and now has refused to produce it despite a promise to do so.  That is really quite shocking.

I look forward to hearing from you, promptly.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

**********************************************************************
**********************************************************************

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is
confidential information intended only for the use of the individual(s) named above.  If the
reader of this message is not the intended recipient, or the employee or agent responsible to
deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or
copying of this communication is strictly prohibited.  If you have received this communication in
error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**James L. Johnson**

| | |
|---|---|
| **From:** | James L. Johnson [james@jamesljohnsondallasattorney.com] |
| **Sent:** | Thursday, November 29, 2018 6:16 PM |
| **To:** | 'Ryan K. McComber' |
| **Cc:** | 'Cameron E. Jean' |
| **Subject:** | Chavez v. Standard; agreed order granting Standard's motion for protective order; certificate of conference, motion to compel discovery from Standard |
| **Attachments:** | order.grant.D.mot.prot.order.pdf |

Ryan:

Thank you for producing the documents on the CD that Standard has labeled "APP 0001 - 1107" (but which is missing pages labeled "APP 0060 - 0226").  Because the court has not yet ruled on Standard's motion for protective order, I cannot determine what documents Standard has produced on the second CD labeled "APP 0060 - 0226."

Of the RFPs listed in the proposed order I submitted to the court on October 22, the first CD appears to resolve all but RFP Nos. 104-105 and 108.  Because those are rather general requests, I am willing to take the chance that any further responsive documents are either on the second CD or are covered by some other more specific RFP.  I suggest an agreed order (attached) be submitted to the court to allow the protective order to now be entered.  Please advise whether Standard is agreeable.

Before reviewing the second CD, I will address a related issue.  Standard's amended responses to RFP Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 104-106, 108 all used the limiting phrase: "Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiffs claim, subject to the entry of a protective order."  These requests did not, however, seek documents concerning any such interpretation.  (Standard used that phrase for RFP Nos. 19-44, where it seems to fit, as those RFPs requested internal rules, guidelines, protocols or other similar criteria concerning interpretations of certain policy provisions.)  It is possible that Standard has produced documents responsive to these requests on the second CD, despite the use of the inapplicable limiting phrase.  If Standard applied the limiting phrase to these requests, however, then the requested documents will not be on the second CD.

I have accordingly modified the list of RFPs to be made the subject of a motion to compel, as referenced in my October 18 email, to the following:

**Requests for Production**.

Nos. 7-8, 10-11, 13-14, 16-17: Standard's objections are baseless.  These requests are quite limited and specific, and seek relevant information.

Standard's use of the label "employment contract" in its amended responses to RFP Nos. 7 and 10 does not cure the problem, as that is merely one way that such a contract could be labeled.  If an "independent contractor contract" was in effect instead, or any of a number of other labels, Standard's use of a different label would avoid production of the applicable contracts.

Standard's use of "specific to Plaintiff's claim" in its amended responses to RFP Nos. 8 and 11 does not cure the problem, as Standard failed to state whether it had any responsive documents.

Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106: As discussed above, I am including these requests as possible subjects of a motion to compel because of Standard's use of the inapplicable limiting phrase: "Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiffs claim, subject to the entry of a protective order."  An appropriate response would simply be: "Standard agrees to produce responsive documents subject to the entry of a protective order."

I look forward to hearing from you promptly.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**James L. Johnson**

| | |
|---|---|
| **From:** | James L. Johnson [james@jamesljohnsondallasattorney.com] |
| **Sent:** | Thursday, December 06, 2018 3:10 PM |
| **To:** | 'Ryan K. McComber'; 'Cameron E. Jean' |
| **Subject:** | FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard [IWOV-DMS.FID1107093] |

Ryan and Cameron:

Unfortunately, I have again heard nothing from Standard since December 4, despite my email reply on that date, and my email yesterday, forwarded below.

I must insist that Standard engage in discussing the issues.  There has already been too much "willful blindness" and "sandbagging" in this case.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

*********************************************************************************************
******************************************************************

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Wednesday, December 05, 2018 3:32 PM
**To:** 'Ryan K. McComber'; 'Cameron E. Jean'
**Subject:** FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard [IWOV-DMS.FID1107093]

Ryan and Cameron:

Another day has passed with no substantive response from Standard as to my November 29 email. For example, Standard has failed to state whether it will agree to produce, subject to the entry of a protective order, the documents responsive to RFP Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106.  Standard does not need any further information from me to answer that question.

Furthermore, I have received no response from Standard to my email yesterday, in which I responded to all its questions as to RFP Nos. 7-8, 10-11, 13-14, 16-17.

Standard is thus inching closer to forcing a motion to compel..

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Tuesday, December 04, 2018 5:47 PM
**To:** 'Cameron E. Jean'; 'Ryan K. McComber'
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard [IWOV-DMS.FID1107093]

Cameron:

I am troubled by Standard's difficulty on the "first category."  The citations in footnote 4 on page 5 of the RFP dates all the way back to the date of service on September 12, 2018.  In light of the pleaded issues of "willful blindness" and "sandbagging" in this case, for Standard to raise this point after almost 12 weeks raises a few red flags.

Regardless, Standard's stipulation that this case is governed by the de novo standard, rather than the abuse-of-discretion standard, only increases the scope of discovery.  As Standard should know from its citation to Crosby on page 6 of the Joint Status Report, the Fifth Circuit stated that "district courts must monitor discovery closely" because, for "federal courts to engage in 'full review of the motivations behind every plan administrator's discretionary decisions'" could cause undue expense. 647 F.3d at 264 (emphasis added).  As noted in RFP footnote 4, the requested discovery is appropriate even under the more restrictive abuse-of-discretion standard.  Standard cannot reasonably argue for narrower discovery under the de novo standard.  Moreover, the Fifth Circuit specifically noted that "whether Blue Cross complied with ERISA's procedural requirements" is a different question than "whether Blue Cross abused its discretion." Id.  As also noted in RFP footnote 4: "Every employee benefit plan shall establish and maintain reasonable claim procedures."  29 C.F.R. § 2560.503-1(b) (emphasis added).  "Every" plan, obviously, includes both those governed by the de novo standard, and those governed by the abuse-of-discretion standard.

Fun Fact No. 1: The de novo standard applies because of Standard's endorsement to the policy, which removed the "Allocation of Authority provision" in its entirety, presumably because it is prohibited by section 1701.062 of the Texas Insurance Code.  See APP 0031.  So Standard knew, or should have known, that the de novo standard applies to this case.  Nevertheless, Standard argued on page 2 of the Joint Status Report: "Standard contends that, among other things, its decision on Chavez's claim was not an abuse of discretion."  Willful blindness?

Fun Fact No. 2: Standard's endorsement was withheld from the documents that Standard mailed to me on April 10, 2018, despite the letter's statement: "enclosed please find a copy of the group disability policy and <u>all</u> amendments and <u>endorsements</u> thereto." Sandbagging?  RFP footnote 4 was not styled to address the <u>de novo</u> standard because Standard withheld the endorsement from the enclosures with the letter dated April 10, 2018.

Finally, you state "We have additional concerns."  Whatever those concerns are, please put them in an email and send them to me.

I suggest that you forward this email to Standard.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

********************************************************************************************
*********************************************************************
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Cameron E. Jean [mailto:Cameron.Jean@figdav.com]
**Sent:** Tuesday, December 04, 2018 4:17 PM
**To:** James L. Johnson; Ryan K. McComber
**Subject:** RE: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard [IWOV-DMS.FID1107093]

James,

I apologize for not emailing you yesterday, but I am still unable to tell you Standard's position.  We have been unable to connect with our client on these issues, given the travel I mentioned in my previous email.  In the meantime, we're still having trouble understanding your argument as to the first category. The cases you cite discuss bad faith through the lens of analyzing discretionary decisions. Why does that apply in a *de novo* review, as we have here?

We have additional concerns we would like to address with you in a substantive telephone conference. Would you please send us your availability to substantively confer via telephone conference sometime after December 12? Thanks, James.



| | | |
|---|---|---|
| **Cameron E. Jean** | ph: 214-939-2000 | Figari + Davenport, LLP |
| Cameron.Jean@figdav.com | dd: 214-939-2033 | 901 Main Street, Suite 3400 |
| **figdav.com** | fx: 214-939-2090 | Dallas, TX 75202 |

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Tuesday, December 4, 2018 3:06 PM

**To:** Ryan K. McComber <ryan.mccomber@figdav.com>; Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Counsel:

I am still awaiting Standard's response.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

---

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Monday, December 03, 2018 4:09 PM
**To:** 'Ryan K. McComber'; 'Cameron E. Jean'
**Subject:** FW: Chavez v. Standard; certificate of conference, motion to compel discovery from Standard

Ryan and Cameron:

I am sending this email as a reminder that I await substantive responses to my November 30 email, which I am forwarding below.  In that email, I responded to all of the issues raised by Standard with respect to November 29 email, as to RFP <u>Nos. 7-8, 10-11, 13-14, 16-17</u> and RFP <u>Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106</u>.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** James L. Johnson [mailto:james@jamesljohnsondallasattorney.com]
**Sent:** Friday, November 30, 2018 4:20 PM
**To:** 'Cameron E. Jean'; 'Ryan K. McComber'
**Subject:** RE: Chavez v. Standard; agreed order granting Standard's motion for protective order [IWOV-DMS.FID1107093]; certificate of conference, motion to compel discovery from Standard

Cameron:

I have submitted the agreed order to the court by email.

The points you raise about the RFPs are addressed below.

1.      You ask: "how are these contracts anything other than "conflict of interest" discovery?"  That matter was addressed in my October 18 email, which I have cut and pasted below:

Nos. 7-8, 10-11, 13-14, 16-17: Standard's objections are baseless.  These requests are quite limited and specific, and seek relevant information.  While Standard's admission that Chavez's claim is governed by the de novo standard eliminates the conflict of interest issue, it does not eliminate the other procedural issues identified in footnote 4:

The claimant in an ERISA case "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  See Crosby v. Louisiana Health Serv. & Indem. Co., 647 F.3d 258, 262 (5th Cir. 2011)(quoting Fed. R. Civ. P. 26(b)(1)).

Discovery of "whether the administrator complied with ERISA's procedural regulations" is "relevant and thus permissible" in an ERISA action.  Crosby, 647 F.3d at 263.  The court explained that it could "envision situations where evidence resolving these disputes may not be contained in the administrative record."  Id.

"Every employee benefit plan shall establish and maintain reasonable claim procedures."  29 C.F.R. § 2560.503-1(b).  Claim procedures must not be "administered in a way" that "unduly inhibits or hampers the initiation or processing of a claim."  29 C.F.R. § 2560.503-1(b)(3); see Koehler v. Aetna Health, Inc., 683 F.3d 182, 191 (5th Cir. 2012)(unreasonable claim procedures can serve as evidence of bad faith).

Facts demonstrating "procedural unreasonableness" may be significant on the question of whether ERISA benefits have been improperly denied.  Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 118 (2008).  Also considered are circumstances "where an insurance company administrator has a history of biased claims administration."  Id. at 117.

2.      You state that "Standard has no employment agreements with its analysts. "  That matter was addressed in my November 29 email, which I have cut and pasted below:

Standard's use of the label "employment contract" in its amended responses to RFP Nos. 7 and 10 does not cure the problem, as that is merely one way that such a contract could be labeled.  If an "independent contractor contract" was in effect instead, or any of a number of other labels, Standard's use of a different label would avoid production of the applicable contracts.

Standard's use of "specific to Plaintiff's claim" in its amended responses to RFP Nos. 8 and 11 does not cure the problem, as Standard failed to state whether it had any responsive documents.

3.      You state "any discussion would only be ripe after the Court enters its Protective Order and you've had a chance to review the production." Actually, it would have been a simple matter for Standard to state whether it intended to respond to RFP Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106 by stating "Standard agrees to produce responsive documents subject to the entry of a protective order," and to state that the responsive documents are included in the second CD labeled "APP 0060 - 0226." Failure to directly address that issue seems to confirm that Standard's use of the inapplicable limiting phrase, "Standard agrees to produce responsive documents relevant to how Standard interpreted the Policy and the specific terms applicable to the closing of Plaintiffs claim," was intentional, such that responsive documents have been withheld. No review by me of labeled "APP 0060 – 0226" will be able to determine whether Standard has withheld responsive documents. That issue is ripe now.

4.      You state: "we are unsure what you meant with respect to Standard's first CD." That matter was also addressed in my November 29 email, which I have cut and pasted below:

Thank you for producing the documents on the CD that Standard has labeled "APP 0001 - 1107" (but which is missing pages labeled "APP 0060 - 0226"). Because the court has not yet ruled on Standard's motion for protective order, I cannot determine what documents Standard has produced on the **second CD** labeled "APP 0060 - 0226."

Of the RFPs listed in the proposed order I submitted to the court on October 22, the **first CD** appears to resolve all but RFP Nos. 104-105 and 108.

(Emphasis added.) In other words, The "first CD" is labeled "APP 0001 - 1107" (but is missing pages labeled "APP 0060 - 0226"), and the "second CD" is labeled "APP 0060 - 0226." Standard has only produced those two CDs to me.

5.      Finally, you state "we have some questions that we think would be better, and most efficiently, addressed on a substantive telephone conference sometime after December 12, 2018." I disagree. I held a lengthy conference with Ryan on October 22. Ryan could not give me Standard's position on a single issue we discussed; he only indicated he would discuss those issues with Standard. The issues outlined above are not complicated. Standard already has "APP 0060 – 0226," and should not need until December 12 to tell me, in writing, whether it contains all documents responsive to RFP Nos. 47, 49-73, 75, 77-78, 80, 82, 84, 86, 88-92, 94, 97-102, 106. I have expressed my views in detail. I have expressed then in writing so that you or Ryan can easily forward them to Standard. What remains is for Standard, by whatever combination of communications among its various representatives, to decide its views and to communicate them to me.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax

***************************************************************************************************
*************************************************************************
CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have

received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.

**From:** Cameron E. Jean [mailto:Cameron.Jean@figdav.com]
**Sent:** Friday, November 30, 2018 3:24 PM
**To:** James L. Johnson; Ryan K. McComber
**Subject:** RE: Chavez v. Standard; agreed order granting Standard's motion for protective order [IWOV-DMS.FID1107093]

James,

Thanks for your email, and I hope you had a great Thanksgiving.

We do not oppose the entry of the proposed order submitted with our Motion [Dkt. 23-1]. Thank you for getting an Agreed Order together—you may file it with our electronic signature, if you wish.

In regards to your concerns about the RFPs, we have some questions that we think would be better, and most efficiently, addressed on a substantive telephone conference sometime after December 12, 2018.  For example, relating to your first category: how are these contracts anything other than "conflict of interest" discovery? Also, we are unclear what you think Standard is withholding in response to such documents, as we indicated that Standard has no employment agreements with its analysts.  As to the second category of RFPs, and as you allude to, any discussion would only be ripe after the Court enters its Protective Order and you've had a chance to review the production. Lastly, we are unsure what you meant with respect to Standard's first CD—if necessary, let's talk about that at the conference as well.

We recognize that a conference after December 12 sounds distant, but both our client and Ryan will be traveling in the meantime. Accordingly, would you please send us some dates/times after December 12 that work for you? We thank you in advance for your professional courtesy, and your effort to ensure that the Parties do not needlessly incur the expense of briefing issues that may be able to be resolved by a substantive conference.



| **Cameron E. Jean** | ph: 214-939-2000 | Figari + Davenport, LLP |
| Cameron.Jean@figdav.com | dd: 214-939-2033 | 901 Main Street, Suite 3400 |
| **figdav.com** | fx: 214-939-2090 | Dallas, TX 75202 |

**From:** James L. Johnson <james@jamesljohnsondallasattorney.com>
**Sent:** Friday, November 30, 2018 11:45 AM
**To:** Ryan K. McComber <ryan.mccomber@figdav.com>
**Cc:** Cameron E. Jean <Cameron.Jean@figdav.com>
**Subject:** Chavez v. Standard; agreed order granting Standard's motion for protective order

Ryan:

I have not heard back from you in response to the email I sent yesterday.

If we do not otherwise reach agreement by 4:30 today, I will submit yesterday's proposed agreed order (attached here as well) directly to the court.

I might feel compelled to advise the court that Standard's first CD was out of order, compared to the documents sent to me by letter dated April 10, 2018, and that many of them had been altered, and that over 100 pages had been withheld from the April 10 copy in violation of the ERISA regulations.

So I suggest that Standard just take yes for an answer.

James L. Johnson
The Johnson Law Firm
10935 Estate Lane, Suite 268
Dallas, TX 75238
214/363-1629
214/363-9173 fax


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

CONFIDENTIALITY NOTICE:  The information contained in this e-mail message is confidential information intended only for the use of the individual(s) named above.  If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited.  If you have received this communication in error, please immediately notify us by telephone at 214/363-1629 or by reply e-mail.  Thank you.