IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOSE CHAVEZ, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-2013-N |
| | § | |
| STANDARD INSURANCE COMPANY, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

This Order addresses Plaintiff Jose Chavez's motion to unseal and alter confidentiality designation [109]. Because the Standard Insurance Company's ("Standard") Claims Manual is a trade secret, the Court denies Chavez's motion.

**I. ORIGINS OF THE DISPUTE**

Plaintiff Chavez had a wrist problem. He applied for long term disability ("LTD") benefits which Standard paid beginning September 2016. Standard requested a medical referral in July 2017, which resulted in termination of Chavez's LTD benefits. During the considerable pretrial skirmishing, Chavez made a request for Standard's "internal rule[s], guideline[s], protocol[s], or other similar criterion" related to Chavez's claim. Req. for Produc. No. 78 at 18 [27-1]. Standard moved for a protective order, claiming that its Claims Manual constituted a trade secret. To avoid a discovery dispute, Standard agreed to produce the Claims Manual subject to the entry of a protective order to protect from public disclosure. The Court entered a protective order, granting confidentiality status to

MEMORANDUM OPINION AND ORDER – PAGE 1

the relevant documents. Nearly two years after the parties agreed to the protective order, Chavez challenges Standard's confidentiality designation and seeks to unseal the cover page and a 195-word excerpt from Standard's Claims Manual.

## II. LEGAL STANDARD

The public "has a common law right to inspect and copy judicial records." *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020). This right promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness, and serves as a check on the integrity of the system. *Id.* (internal quotations omitted). Even information that may not be of particular interest to the public is subject to the presumptive right of public access. *See Macias v. Aaron Rents, Inc.*, 288 F. App'x 913, 915 (5th Cir. 2008). This right, however, is not absolute and merely establishes a presumption of public access to judicial records. *See S.E.C. v. Van Wayenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). The Fifth Circuit has not assigned a particular weight to this presumption, nor has it interpreted this presumption as creating a burden of proof. *Id.* The "cases that have recognized [a common law right of access] do agree that the decision as to access is one best left to the sound discretion of the trial court . . . ." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978). In determining whether to seal judicial records, "the court must balance the public's common law right of access against the interests favoring nondisclosure" and consider "relevant facts and circumstances of the particular case." *Van Waeyenberghe*, 990 F.2d at 849.

The requirement of maintaining documents under seal is more stringent than the "good cause" requirement for the issuance of a protective order. *See Franklin v. Law Firm of Simon, Eddins & Greenstone, L.P.*, No. 3:10-CV-1581-D, 2012 WL 2159219 (N.D. Tex. June 14, 2012). However, the Supreme Court explained in *Nixon* that "the common-law right of inspection has bowed before the power of a court to insure [sic] that its records do not serve as sources of business information that might harm a litigant's competitive standing." *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) (citing *Nixon v. Warner Comm., Inc.*, 435 U.S. 589, 598 (1978)). Relying on *Nixon*, courts have held that "[i]n general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to . . . release trade secrets." *Id.* (citing *Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006)).

### III. THE COURT DENIES CHAVEZ'S MOTION TO UNSEAL

Chavez argues that the Court should remove the confidentiality designation on the cover page and certain excerpts of Standard's Claims Manual. Chavez claims that the excerpts he seeks to unseal "contain nothing sensitive or harmful to Standard's business." The Court disagrees. Courts have routinely found that insurer's claims-handling guidelines are trade secrets. *See Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 230–31 (5th Cir. 2020) (citing *Herrnreiter v. Chicago Hous. Auth.*, 281 F.3d 634, 637 (7th Cir. 2002)); *see also Haldiman v. Cont'l Cas. Co.*, No. CV–13–00736–PHX–GMS, 2014 WL 584305 (D. Ariz. Feb. 13, 2014) (citing cases). Unsealing Standard's Claims Manual could certainly

harm Standard's competitive standing. For instance, competitor insurance companies could duplicate or reconstruct Standard's claims-handling procedures, information which is "particularly valuable to small insurance companies without resources to develop their own policies." *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 424 (S.D. Ind. 2001). Standard has demonstrated through the affidavit of its employee Leo Suzuki that it incurred substantial expense in the creation of its guidelines, treats them as confidential and proprietary trade secrets, and does not willingly or voluntarily provide access to this information to individuals not affiliated with Standard. Def.'s Mot. for Prot. Order, Ex. A [25]; *see also Cohen v. Metro. Life Ins. Co.*, 00CIV.6112(LTS) (FM), 2003 WL 1563349, 15 *1 (S.D.N.Y. Mar. 26, 2003) (holding that a company employee's affidavit "is sufficient to fulfill [the requesting company's] burden of showing both the requisite confidential nature of the material and good cause for issuance of a protective order."). Although Chavez argues that this merely satisfies the lower standard for the issuance of a protective order, the Court determines that compelling reasons exist to maintain Standard's Claims Manual under seal. *See Apple Inc.*, 727 F.3d at 1221 (release of trade secrets justifies sealing court records).

      Chavez argues that, even if the Claims Manual is a trade secret, Standard has waived any protections by paraphrasing part of one sentence in the subject excerpts while omitting the remainder. Chavez cites to *Littlejohn v. Bic Corp.* for the proposition that the release of information in open court "is a publication of that information" and operates as a waiver of trade secret status. *Littlejohn v. Bic Corp.*, 851 F.2d 673, 380 (3d Cir. 1988) (waiving confidentiality when documents were repeatedly used in open court during trial and

MEMORANDUM OPINION AND ORDER – PAGE 4

admitted into evidence without objection). However, Chavez has cited no authority to suggest that Standard's one sentence reference to the contents of its Claims Manual can be considered a sufficient "publication" equivalent to the facts of *Littlejohn*.[1] If a single reference in a motion could destroy confidentiality of a sealed document, parties would be forced to place virtually every document under seal, drastically limiting the public's access to court records in any case involving trade secrets. The Court determines that Standard's reference to its Claims Manual was minimal and that paraphrasing one sentence does not constitute a publication of Standard's trade secret.

Finally, Chavez argues that fairness requires partial disclosure of the claimed trade secret. *See Fort James Corp. v. Solo Cup Co.* 412 F.3d 1340 (Fed Cir. 2005) ("[F]airness dictates that a privilege holder 'cannot be allowed, after disclosing as much as he pleases, to withhold the remainder.'"); *see also Chrimar Sys., Inc. v. Alcatel-Lucent USA, Inc.*, 2016 WL 11673959, at *1 (E.D. Tex. Jun. 22, 2016) ("[T]he disclosing party cannot waive privilege as to documents that support its position, but maintain privilege over documents that do not."). Unlike the cases Chavez cites involving claims of attorney-client privilege, the Court's protective order did not preclude Chavez from fairly litigating his case, albeit under seal. Indeed, this case has already reached final judgment in favor of Chavez. Attorney fees have been awarded. The only remaining justification for unsealing Standard's Claims Manual is the common law right of access to court records.

---

[1] Standard stated that "the relevant portion of the claims manual contemplates when a claimant should be *notified* of any change in the definition of disability." Def.'s Reply Mot. to Amend/Correct Findings at 6 [108] (emphasis in original).

MEMORANDUM OPINION AND ORDER – PAGE 5

The Court does not diminish the value of the common law right of access. But the public policy reasons for protecting trade secrets are compelling. If trade secrets were not safeguarded by courts, litigants would be forced to choose between fully presenting their claims or defenses (losing trade secret protection) or foregoing their claims or defenses (potentially losing their case). Moreover, this would extend litigation and decrease efficiency of the discovery process. In this very case, Standard produced its Claims Manual subject to an agreed protective order rather than engage in lengthy discovery disputes with Chavez. Chavez is now asking this Court to alter the confidentiality status of Standard's Claims Manual nearly two years after the entry of an agreed protective order and after Standard relied on the Court's protection in disclosing its internal documents. The Court declines to assist Chavez in this bait-and-switch.

## CONCLUSION

Because the Claims Manual of Standard is a trade secret, the Court denies Chavez's motion to unseal.

Signed October 30, 2020.

David C. Godbey
United States District Judge